(Decided 24th June, 1885.)

---

# The North State Copper and Gold Mining Company *vs.* Thomas L. Field.

### *Foreign corporation—Jurisdiction.*

The Courts of Maryland will not interfere in controversies relating only to the internal management of the affairs of a foreign corporation. Such controversies must be settled by the Courts of the State creating the corporation.

Where the act of a foreign corporation affects one solely in his capacity as a member of the corporation, such act may be said to relate

to the management of the internal affairs of the corporation; but it is otherwise where it affects his individual rights only.

APPEAL from the Superior Court of Baltimore City.

This was an appeal from an order of the Court below sustaining the demurrer to the answer of the defendant, and directing a mandamus to issue.   The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ROBINSON, IRVING, and BRYAN, J.

*R. W. Applegarth,* and *Julian I. Alexander,* for the appellant.

*D'Arcy Paul,* and *J. Wilson Leakin,* for the appellee.

STONE, J., delivered the opinion of the Court.

This is an application for a mandamus by the appellee, against the appellant, a corporation created by the laws of the State of North Carolina.   It appears that the appellee is a citizen of this State, and that the appellant corporation has an office in, and is transacting business within this State.

The foundation of the complaint, and application for mandamus is, that the appellee was a stockholder in the appellant corporation, and that the directors of the corporation declared his stock forfeited by reason of the non-payment of an assessment, made by the directors on each stockholder.   He, the appellee, insists that such assessment was illegal and void, and he asks to be reinstated as a stockholder on the books of the company, and restored to all his rights as such stockholder.

Among other defences set up by the appellant, it insists that the Courts of Maryland have no jurisdiction over it, in a case like that disclosed by the record; and if its con-

tention in that respect, is true, it will be decisive of the case, and relieve us from an examination of the other questions presented for our consideration.

The Act of 1868, ch. 471, sec. 209, provides that "Any corporation not chartered by the laws of this State, which shall transact business therein, shall be deemed to hold and exercise franchises within this State, and shall be liable to suit in any of the Courts of this State, on any dealings or transactions therein."

And in a subsequent section the law provides:

"Suits may be brought in any Court of this State, or before a justice of the peace, against any corporation not incorporated under its laws, but deemed to hold and exercise franchises therein, or against any joint stock company or association doing business in this State, *for* any cause of action; and by a plaintiff, not a resident of this State, when the cause of action has arisen, or the subject of the action shall be situated in this State."

The object of our statute, and of similar statutes passed by other States, is to provide for the collection of debts due from foreign corporations, to our own citizens, and to enforce contracts made here by foreign corporations through its agents, and to protect our citizens from frauds or wrong, whether the wrong-doer be foreign or domestic.

But it was not the intent of our statute to give our Courts jurisdiction over the *internal* affairs of a foreign corporation. Our Courts possess no visitorial power over them, and can enforce no forfeiture of charter for violation of law, or removal of officers for misconduct; nor can they exercise authority over the corporate functions, the by-laws, nor the relations between the corporation and its members, arising out of, and depending upon, the law of its creation. These powers belong only to the State which created the corporation.

In the case of *Wilkins vs. Thorne*, 60 *Md.*, 253, this Court said:

"This is clearly a controversy relating to the *internal* management of the corporation, and the validity of the acts of those who claim to be, and indeed are admitted to be, *de facto* its officers and stockholders.  Now, if this were a Maryland corporation, there could be no question as to the jurisdiction of a Maryland Court over the subject, but such is not the case.  The corporation was created by the laws of another State ; and it seems to us that all such controversies must be determined by the Courts of the State by which the corporation was created."

*Thorne's Case* was a controversy between *bona fide* stockholders of a corporation on the one side, and those claiming to be stockholders, and the president and directors on the other ; and such a controversy was said by this Court to be a controversy about the internal management of the corporation.

It may not be in all cases easy to draw a clear line of distinction between the acts of a corporation relating to its internal management, and those which do not.  But we apprehend the distinction to be this:  That where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president, or other officer, and is the act of the corporation, whether acting in stockholders' meeting, or through its agents, the board of directors, that then such action is the management of the internal affairs of the corporation, and in case of a foreign corporation, our Courts will not take jurisdiction.  Where, however, the act of the foreign corporation complained of affects the complainant's individual rights only, then our Courts will take jurisdiction, whenever the cause of action arises here.

The controversy in the case before us arises entirely out of the internal management of the affairs of the company.  It is the complaint of a *stockholder*, that he has been deprived of his rights, *as a stockholder*, by the illegal action of the board of directors.  His complaint is, that he is still

North State Copper and Gold Mining Co. *vs.* Field.

a stockholder, and a member of the corporation, and entitled to his vote at the stockholders' meeting, &c., but that these rights have been withheld from him by the action of the directors, and he seeks to be reinstated as a member of a foreign corporation by the action of a Maryland Court. He seeks this through the extraordinary remedy of a *mandamus*, to compel the board of directors to place on their books his name as a stockholder, and thus to restore him to all the rights of a member of the corporation, which the directors say he had forfeited.

In *Howell vs. Chicago and Northwestern Railway Co.*, 51 *Barbour*, 378, the Supreme Court of New York refused to restrain the company from paying a stock dividend, upon the ground that the company had no authority to declare such a dividend, for the reason, that the Courts of one State would not undertake to regulate the *internal affairs* of a foreign corporation, and refused to investigate the question, whether the dividend was rightfully or wrongfully declared.

The case of *Stafford & Co. vs. American Mills Co.*, 13 *Rhode Island*, 310, was a petition to appoint a receiver for a New York corporation in Rhode Island. It was shown that two out of the three stockholders who constituted the corporation resided in Rhode Island, and that much the larger part of the corporate property was located in Rhode Island. The corporation entered an appearance, and submitted to the jurisdiction of the Court. But the Court dismissed the petition, and refused to entertain jurisdiction, because such jurisdiction was not conferred by their statute.

*Redmond vs. Enfield Manufacturing Company*, 13 *Abbott's Practice, Reports, (N. S.,)* 332, was a case where a stockholder attempted to compel a foreign corporation to divide the assets among the stockholders, and the Court said :

North State Copper and Gold Mining Co. *vs.* Field.

· "To attempt, by a judgment of this Court, to compel a foreign corporation to distribute its assets among the stockholders, because some of the directors were resident here, or because some of the funds were within the jurisdiction of the Court, would be assuming a power which the Court ought not to exercise, and rendering a judgment which could not be enforced against the company in the place of its existence."

Being of opinion that the Legislature did not contemplate or intend, by the passing of the statute we have quoted, to give to our Courts jurisdiction and power to regulate the merely internal affairs of a foreign corporation, and as our Courts clearly possess no such power unless conferred upon them by statute, we must reverse the order appealed from, and dismiss the petition.

We can see no such evil consequences likely to result from this doctrine, as the appellee seems to apprehend. Much more serious consequences, we think, would likely result from opening the doors of our Courts, for the settlement of the domestic quarrels of every foreign corporation that may choose to open a place of business, or hold a directors' meeting in this State. If this were allowable in the States generally; there would likely be conflicting decisions, and the result interminable confusion, as well as judgments and decrees that the Courts of Maryland would be unable to enforce.

*Order reversed, and*
*petition dismissed.*

(Decided 24th June, 1885.)


BRYAN, J., dissented.