# Richmond.

## Taylor v: Mutual Reserve Fund Life Association.

### April 6, 1899.

Absent, Cardwell, J.

1. Foreign Corporations—*Management of Internal Affairs—Jurisdiction—Act of May 18, 1887.*—Courts will not undertake to control or overhaul or otherwise interfere with the management of the internal affairs of a foreign corporation. This rule is not affected by the Act of May 18, 1887 (Acts 1887, p. 348), in relation to insurance companies and associations on the assessment plan.

2. Foreign Corporations—*Internal Management—Jurisdiction—Case in Judgment.*—In a suit against a foreign corporation, if the act complained of affects the complainant solely in his capacity as a member of the corporation, whether as stockholder, director, president, or other officer, and is the act of the corporation, then such action is the management of the internal affairs of the corporation, and our courts will not take jurisdiction of it. But if the act of the foreign corporation complained of affects the complainant's individual rights only, and the cause of action arises here, our courts will take jurisdiction. In the case in judgment the acts complained of affect the complainant in his capacity as a member of a foreign corporation, and the relief prayed is such as the trial court could not adequately afford, and hence the demurrer to the bill was properly sustained.

3. Foreign Corporations—*Contracts with—Jurisdiction.*—Rights which rest upon a contract of insurance with a foreign corporation, and not upon the contract of membership in the corporation, may be enforced in the courts of this State.

4. Injunctions—*Inability to Enforce.*—An injunction ought not to be granted which cannot be enforced.

5. Chancery Practice—*Lack of Jurisdiction—Opinion on Merits.*— Where the case made and the relief sought by a bill to enforce a

contract are not within the jurisdiction of the court, it has no power to construe the contract. Being without jurisdiction, no opinion should be expressed on the merits of the controversy.

Appeal from a decree of the Law and Equity Court of the city of Richmond pronounced August 12, 1898, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*William L. Royall,* for the appellant.

*Frank R. Lawrence, Charles S. Stringfellow, L. L. Lewis, George Burnham, Jr.,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The bill in this case was filed against the Mutual Reserve Fund Life Association, its officers and directors, by the appellant, who sued in behalf of himself and all other policy-holders in that company similarly situated who would come into the suit and contribute to its prosecution.

The bill was afterwards amended for the purpose of giving the names of the president and directors of the association, which were not given in the original bill because unknown, and of making a statute of the State of New York an exhibit with the bill.

The allegations of the bill are, in substance, that in the year 1882, when the complainant was sixty years of age, he insured his life in the sum of $5,000 for the benefit of his wife, who has since died, in the Mutual Reserve Fund Life Association, a corporation chartered under the laws of the State of New York, then and now doing business in the State of Virginia; that the association had an agent in this State upon whom process could be served, and had deposited with the Auditor the securities re-

quired of a foreign insurance company doing business here as provided by statute; that the defendant association was a mutual assessment company, having no capital stock, and its policy holders were members of the association; that each policy-holder paid an admission fee, annual dues on each thousand dollars of insurance, and bi-monthly mortuary assessments; that seventy-five *per cent.* of these assessments, under the charter, went into the death fund, from which all death losses were paid, and twenty-five *per cent.* into the reserve fund, which belonged to members of the association, except certain death losses which were to be paid from it; that after the expiration of each period of five years, whilst a certificate of membership or policy of insurance remained in force, a bond was to be issued to the holder of the certificate of an equitable proportion of the reserve fund, bearing four *per cent.* interest annually, the principal of which bond after ten years became available towards paying future dues and assessments under the certificate; that this was the general plan for insurance upon which the association was organized, and upon which it had been conducting its business until a comparatively recent period, when it had wholly departed from that plan, to the great injury and loss of the complainant and many others.

It is further alleged that when the defendant company commenced business all its policies or certificates of membership represented upon their face that, when the death fund was insufficient to meet losses by death, an assessment would be made upon the entire membership in force at the date of the last death to cover losses, and that such assessment would be apportioned among all the members according to a most reasonable table which was printed upon the certificate of membership; that while some of the policies subsequently issued did not set out that agreement as explicitly as did the earlier policies, yet there was an implied agreement in all of them, that no assessment would be made while there was money enough in the death fund to meet

all death losses, and that when an assessment was made it would be upon all the members of the association according to the scale established, or according to a just and reasonable scale; that, in addition to the express or implied agreements to that effect contained in the policies issued, the association authorized its agents all over the United States to make express representations to that effect to persons who were solicited to insure, and that its agents did actually assure many such persons that the company would never make any assessments greater than those printed upon the certificate of membership; that it is true that the first policies issued contained a few words of doubtful meaning, hidden away at the end of a clause relating to a wholly different subject, that might possibly be held to authorize assessments at the discretion of the managers, and that later policies assert such a right in bolder language, but their later assertions were not made until after a general belief had grown up everywhere, by reason of its long continued public representations, that no assessment would be made except of the smallest and most reasonable character, and which would be ratable upon all members of the association; that the complainant so understood and was justified in so understanding its plan of assessment when he insured in the association; that, notwithstanding its said assurances and representations the association gradually increased the rate of assessment over that in force in the year 1882, which was $90 a year on his policy of $5,000, until it was $169.20 in the year 1894; $360.90 in the year 1895, and would be $707.70 for the year 1898, according to the bi-monthly assessment made in February of that year; that this increase in its assessments was not a fair and reasonable use of its power, even if the power to increase existed, as claimed by the association, but was extortion and robbery imposed upon the complainant and all others situated like him to coerce him and them into abandoning their policies and forfeiting all that they had paid into the treasury of the association; that these increased assessments were in vio-

lation of the express and implied agreements made with the complainant and other policy holders when they were insured, and were wholly unnecessary, unless the association had been for years making false statements of its condition; that its annual reports, filed under the provisions of the statutes of this State, showed that in the year 1893 it had over eighty-two thousand policies of insurance, aggregating over two hundred and sixty millions of dollars, and that its losses for that year were less than four million dollars; that in 1894 it had over ninety-six thousand policies of insurance, amounting to over two hundred and ninety-three millions of dollars, and that its losses for that year were a little over four millions of dollars; that for 1895 its policies were over one hundred and five thousand, insurance over three hundred and eight millions of dollars, and losses a little less than five million dollars; that in 1896 its policies were over one hundred and eighteen thousand, insurance over three hundred and twenty-five millions dollars, and losses less than five million dollars; that the report for 1897 had not been filed, but in the address of the President of the Association it was stated that its business for that year was as satisfactory as for any previous year; that, if these statements of its Auditor were true, there was no excuse for making any extraordinary assessments on its policy-holders, but, if there was any necessity for such increased assessments, it was because there had been a fraudulent misappropriation of the resources of the association; that the complainant, upon information and belief, charged that there had been such fraudulent misappropriation by its officers and agents, and that this fact could be demonstrated if the court would require the company to exhibit its books, papers, and vouchers for inspection and examination.

It was further alleged that the explanation of the extortionate assessment which the association had made for the year 1898 was found in the fact that two years or more before, those who managed the affairs of the association determined, in violation of

its charter and the contracts it had made with its policy-holders, to change it from the basis of a mutual assessment company to the basis of what is called a " level premium " company; that, accordingly a very attractive policy of the level premium character had been prepared, and its agents directed to use that policy in effecting all new insurance; that this new policy provided for the ordinary annual premium, which was reasonable, and was to remain the same as long as the policy was in force, and contained other provisions which made it a very desirable policy; that notwithstanding its attractive features the association had outstanding a vast body of insurance under its old plan which could not be converted into a company upon the level premium plan until the old policies were gotten in; that its agents were therefore instructed to offer the new policy to the holders of the old with full explanation of its advantages, and to threaten that, unless an exchange was made, the holders of the old policies would be assessed so immoderately that they would find it burdensome to carry them; that the association denied the advantages of the new policy to all persons over the age of sixty years, including the complainant; and had enticed or bullied out of the class that had insured up to 1897 all good risks that could get out, and had refused to allow the old and infirm risks of that class to come out of it upon any terms, yet proceeded to assess them with a sum that it knew they could not pay, and threatened, if that assessment was not sufficient to make them abandon their policies, that it would be so increased thereafter as to compel them to do so, and thus confiscate all that they had paid to the association; that the complainant had refused to pay the unreasonable and extortionate assessment made upon him in February, 1898, and that in consequence thereof the association had threatened that it would declare his policy lapsed and forfeited unless he paid that assessment, on or before the 3rd day of March, 1898, and if it was permitted to do this it would inflict upon him irreparable injury; that complainant had demanded redress of his grievances .

at the hands of the association, its officers and manager, but they had refused to give him any relief whatever. It was further alleged that the association had estate and debts due it in the city of Richmond.

The prayer of the bill was that the association, its agents and officers, be enjoined and restrained from taking any proceeding whatever to have the complainant's certificate of membership or policy of insurance in the association declared lapsed or forfeited; that they be required to make an exhibit of the association's books, papers and vouchers to the court, so that it could determine what would be a reasonable rate of assessment upon the complainant, and when such reasonable rate of assessment had been determined by the court that it should decree that the association should receive that assessment, give receipts therefor to the complainant, and keep his certificate or policy of insurance in force and effect, or issue to him one of the new policies of the association; that they be required to exhibit a list of all its certificates or policy holders in force January 1, 1895, at what age each was issued, the date and amount of each policy; that the defendants be required to produce *here* for the inspection of the complainant all the books, papers and vouchers of the association which might be necessary to enable him to ascertain the manner in which it had been conducting its business, and whether any of its resources had been fraudulently misappropriated; and for general relief.

Process was served upon the agent of the association as provided by statute. The association appeared by counsel and demurred to the bill. Its demurrer was sustained, and the bill dismissed. From that decree this appeal was allowed.

Several grounds of demurrer are relied on, but the principal objection urged to the bill is that the case made, and the relief sought, would require the court to interfere with the internal management of a foreign corporation, a subject matter over which the court has no jurisdiction. If this objection is well founded,

it is decisive of the case, and will render it unnecessary for us to consider the other grounds of demurrer. It seems to be well settled that courts will not interfere with the management of the internal affairs of a foreign corporation. Such questions are to be settled by the tribunals of the State which created the corporation. The reasons for such a rule are apparent. Courts other than those of the State creating it, and in which it has its *habitat*, have no visitorial powers over such corporation, have no authority to remove its officers, or to punish them for misconduct committed in the State which created it, nor to enforce a forfeiture of its charter. Neither have they the power to compel obedience to their orders, nor to enforce their decrees. *Smith* v. *Mutual Life Ins. Co.*, 14 Allen 336; *The North State Mining Co.* v. *Field*, 64 Md. 151; *Condon* v. *Mutual Reserve Fund Life Ass.*, Court of Appeals of Maryland, (January term 1899); 6 Thompson on Corporation, sec. 8011.

There is nothing in the act of Assembly approved May 18, 1887, entitled "An act in relation to Insurance Companies and Associations upon the assessment plan," (Acts of Extra Session 1887, ch. 271, p. 348, &c.,) which changes the general rule upon the subject and gives to the courts of this State the right to control or interfere with the management of the internal affairs of a foreign corporation doing business here. Section 3 of that act provides, among other things, that no insurance company or association organized upon the assessment plan shall transact business in this State by an agent, unless it shall first authorize some person who is a resident of this State " to act as its attorney, and to acknowledge service of process, or upon whom process may be served for and on behalf thereof, which service shall be taken and held to be as valid as if served upon such corporation or association according to the laws of this or any other State."

The object of that provision of the act was to secure the residents of this State the benefit and protection of its own laws, and to confer upon its own courts jurisdiction to determine and

enforce their rights where the subject matter of the litigation was within their jurisdiction, or the remedy sought was within their reach. It provides how the corporation can be brought into court, but it does not confer upon the courts, nor does it require such corporations to concede, any right to exercise authority over the organization, the corporate functions, nor the relations between the corporation and its members; nor to determine the rights and duties of the corporation or its members arising under the law of the State of its creation, and depending upon its local laws, nor deprive it of the right to plead a want of jurisdiction on the ground that the subject matter of the suit, or the remedy sought, is beyond the reach of the court, or not within the sovereign power of the State from which the court derives its authority. *Smith* v. *Mutual Life Ins. Co.*, *supra; Clark* v. *The Mut. Reserve Fund Ass.*, decided by the Court of Appeals of the District of Columbia (Feb. 7, 1899); and *Condon* .v. *The Mut. Reserve Fund Ass.*, *supra.* See Story on Conflict of Law, sec. 543.

The next question to be considered is whether or not the acts complained of are so distinctively acts pertaining to the management of the internal affairs of the association that they can only be inquired into by the courts of the State creating it.

It is sometimes difficult to determine what acts of a corporation relate to its internal management, and what do not. The cases are not entirely agreed upon this question.

In the case of *North State Copper and Gold Mining Co.* v. *Fields*, 64 Md. 151, which has been cited with approval by many courts, and may be regarded as the leading case upon this subject, the line of distinction is stated as follows: " Where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president, or other officer, and is the act of the corporation, whether acting in stockholders' meeting, or through its agents, the board of directors, then such action is the management of the

internal affairs of the corporation, and in the case of a foreign corporation our courts will not take jurisdiction. Where, however, the act of the foreign corporation complained of affects the complainant's individual rights only, then our courts will take jurisdiction, whenever the cause of action arises here." .

The defendant corporation is an assessment company. It has no capital stock and he who takes out a policy of insurance in it becomes a member of the body corporate, clothed with the rights and subject to the liabilities of a stockholder. He is at once insurer and insured. May on Insurance, sec. 548. His liabilities and his rights depend entirely upon the conditions and obligations of his membership. Those obligations and conditions are evidenced by his certificate of membership, the charter, constitution, and by-laws of the corporation, and statutes of the State creating it. Niblack on Benefit Societies, sec. 136; 2 May on Ins., sec. 552; Bacon on Benefit Societies, &c., sec. 161.

The wrongs complained of by the appellant in his bill, briefly stated, are the imposition of illegal assessments upon him and other members of the association over sixty years of age; the adoption of a new plan of insurance without authority, the advantages of which are denied to him and those of his class; the unlawful action of the association in inducing by pursuasion and threats the young members of the association to give up their old policies and to take out policies under the new plan, thereby increasing the burdens of the appellant and the old members, and thus compelling them either to pay exorbitant assessments, or leave the association and lose all that they have paid; and the fraudulent misappropriation of the assets of the association by its officers and agents. All these alleged acts of misconduct affect the appellant in his capacity as a member of the association.

The counsel of the appellant insists that by the terms of his policy of insurance it was agreed that the rate of assessment " should always be what they were at the time of insurance, to

be raised in emergencies, according to a scale applied to all in the same way," and that any change in the rates of assessment was a violation of his contractual rights.

If it were true when the appellant became a member of the association that he contracted with it that the rate of assessment should never be changed, we do not see how that could affect the question under consideration. The bill charges that the rates of assessment have been increased in violation of the appellant's rights. The question is not how those rights were acquired, but whether the violation of those rights affects him in his capacity as a member of the association, and do not affect merely his individual rights.

The appellant has rights which rest upon his contract of insurance, and not upon his contract of membership in the society (Niblack on Ben. Societies, sec. 136), and for a violation of those rights he is entitled to redress. The mere fact, as was said in *Condon's case, supra,* that " he is a member of the corporation does not prohibit him from asserting against the corporation any right arising out of his contract; but the character of the remedy invoked may measure the limits of the jurisdiction of the tribunal appealed to when the domicile of the corporation is considered. It is therefore entirely possible that a state of facts which would authorize a court in the exercise of its visitorial power to enquire into the validity of acts affecting a policy-holder, when done by a corporation located within the jurisdiction of the court, would as respects a foreign corporation, be wholly insufficient to confer upon the same court jurisdiction to act at all."

Not only are the acts complained of acts which relate to the internal management of the association, but the relief sought, if granted, would require the courts of this State to control and overhaul that management.

The first prayer is that the association be enjoined and restrained from taking any proceedings to have the appellant's certificate of membership or policy of insurance declared lapsed

or forfeited. This prayer is based upon the allegation that the association had threatened to declare it forfeited if he did not pay what is charged to be an illegal and extortionate assessment.

If the court were of opinion that the assessment was invalid, how could it restrain and control the association at its home office in the State of New York where the assessments were to be paid? It would have no power to enforce its restraining order if the association refused to obey it. It is clear that an injunction ought not to be granted which cannot be enforced. *Condon* v. *Mut. Res. Fund Life Ass.*, *supra; Clark* v. *Same, supra.*

Another prayer of the bill is that the association be required to exhibit its books, papers and vouchers, and furnish a list of its policy-holders for the inspection of the appellant in order that he might ascertain from them whether or not there had been any fraudulent misappropriation of the assets of the association by its officers and agents, and in order that the court could determine what would be a reasonable rate of assessment upon the appellant, and when it had determined what would be a reasonable rate, to decree its payment, require the association to receive it, give receipts therefor, and to keep his policy alive or to issue him one of its new policies. In order to grant such relief it would be necessary for the court to investigate, overhaul and control the management of the internal affairs of the association. It is manifest that the courts of no State other than that of the domicile of the foreign corporation ought to attempt to exercise any such power over it. To do so would render it dangerous, if not impossible, for a corporation to do business beyond the limits of the home State. Its books and papers might be required at the same time in the courts of many, or all, of the States in which it was doing business. Each of these courts after over-hauling its internal management to see what would be a reason-able rate of assessment might determine that question differently, thus leading to confusion and injustice in the administration of the internal affairs of the corporation. Courts, even if they

had such power, would be slow to exert it when its exercise would lead to such results, but would leave the parties to litigate their rights in the courts of the State under whose laws the corporation had been created, and where such matters could alone be properly settled.

In *North State &c. Company* v. *Fields, supra,* the foundation of the complainant was that the foreign corporation had imposed an illegal and void assessment upon its stockholder, and had declared Fields' stock forfeited by reason of his non-payment of the assessment upon him. The object of his suit was to compel the company to reinstate him as a stockholder on the books of the corporation, but the court refused to grant the relief because to do so would be interfering with the management of the internal affairs of the foreign corporation.

In *Clark's case, supra,* which was a bill filed against the appellee association by one of its members, as is this, and based largely upon the same allegations of fact and seeking in the main the same character of relief, it was held that a court of equity of the District of Columbia had no jurisdiction to enjoin the association from enforcing or attempting to enforce certain assessments made upon one of its members and policy-holders, or adjudge and decree as null and void certain changes and increase in the rate of assessment from the rate fixed in the certificate issued to him, or to determine what would be a proper rate of assessment upon its members, or to require a production of its books and papers for an accounting. This decision was based upon the ground that the acts complained of affected the plaintiff in his rights as a member of the association, and were the acts of the corporation performed in the administration of its corporate affairs.

In *Condon's case, supra,* which was also a suit against the appellee association, brought by one of its members in behalf of himself and others similarly situated, the allegations of the bill and the relief sought were substantially the same as in the Clark

case, and a like conclusion was reached by the Court of Appeals of Maryland. *Madden* v. *Electric Light Co.*, 181 Penn. St. 617; *Kansas & Eastern R. Co.* v. *T. S. & W. R. Co.*, 135 Mass. 34.

We are of opinion that the subject matter of this suit is not within the jurisdiction of the courts of this State, and that the remedy sought is beyond their reach. The demurrer to the bill was therefore properly sustained.

The counsel for appellant insists that although this court may not be able to grant all the relief prayed for, it ought to construe appellant's contract with the association and determine what his rights are under it, and thus render those questions *res judicata*. This contention cannot be sustained. The case made and the relief sought, not being within the jurisdiction of the court, it has no power to construe the contract. Whenever a court determines that it has no jurisdiction of a case, it should express no opinion upon the merits of the controversy. The only course which a court can rightfully pursue in such a case is to decline to speak at all where it cannot speak by the law.

We are of opinion that there is no error in the decree complained of, and it must be affirmed.

*Affirmed.*