THE PEOPLE *ex rel.* Ocean Accident and Guarantee Corp.

*v.*

JAMES R. B. VANCLEAVE.

*Opinion filed October 19, 1900.*

1. INSURANCE—*clause 6 of section 2 of Casualty Companies act of 1899 construed.* Clause 6 of section 2 of the act concerning casualty companies, (Laws of 1899, p. 238,) providing that the declaration of intention to form a corporation shall state the kinds of insurance to be transacted, which "may include such kinds * * * as are specified under subdivisions 1 and 2 of section 1 hereof, *or* under subdivisions 3, 4, 5, 6 and 7 of section 1," does not imply that companies electing to transact the kinds of insurance specified in subdivisions 1 and 2 shall not transact the kinds specified in subdivisions 3, 4, 5, 6 and 7, since the word "or" must be construed to mean "and."

2. SAME—*right of casualty company to combine all kinds of insurance specified in act of 1899.* A corporation, domestic or foreign, which has been licensed to do business in this State under subdivisions 3, 4, 5 or 6 of section 1 of the Casualty Companies act of 1899, may, upon complying with the statutory formalities, combine therewith the business specified in subdivisions 1 and 2 of such section.

BOGGS, C. J., and CARTER, J., dissenting.

ORIGINAL petition for *mandamus.*

This is an original petition, filed in this court at the June term, 1900, by the People upon the relation of the Ocean Accident and Guarantee Corporation, Limited, a foreign corporation, organized and existing under an act of parliament of the kingdom of Great Britain and Ireland, asking for a writ of *mandamus,* commanding the defendant, the State Insurance Superintendent, to grant and issue to the petitioner a license to transact in the State of Illinois all of the six lines of insurance set forth in subdivisions numbered from 1 to 6 inclusive of section 1 of "An act to incorporate and to govern casualty insurance companies, and to control such companies of this State and of other States doing business in the State of Illinois, and providing and fixing the punishment for violation of the provisions thereof, and to repeal all laws

now existing which conflict therewith," approved April 21, 1899, in force July 1, 1899. (Laws of Ill. 1899, p. 237). The defendant has interposed a demurrer to the petition.

The above entitled act of April 21, 1899, so far as it is necessary to set the same forth in order to understand the questions raised by the demurrer to the petition, is as follows:

"Sec. 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That any number of persons not less than thirteen, may, in the manner hereinafter prescribed, form a corporation for the purpose of issuing policies for any of the following kinds of insurance business:

"*First*—Insuring any person against bodily injury, disablement or death resulting from accident, and providing benefits for disability caused by disease.

"*Second*—Insuring against loss or damage resulting from accident to, or injury suffered by, an employee or other person for which accident or injury the person insured is liable.

"*Third*—To guarantee or indemnify merchants, traders and all others engaged in business and giving credit therein from loss or damage by reason of giving or extending credit to their customers.

"*Fourth*—Against loss by burglary or theft, or both.

"*Fifth*—Upon glass against breakage.

"*Sixth*—Upon steam boilers and pipes, engines and machinery connected therewith or operated thereby; against explosion and accident and loss or damage to life or property resulting therefrom and to make inspection of and to issue certificates of inspection upon such boilers and pipes, engines and machinery; also upon elevators and machinery forming a part thereof and to make inspection and to issue certificates of inspection upon the same.

"*Seventh*—Against any other casualty or insurance risk specified in the article of organization, which may

lawfully be the subject of insurance and the formation of corporation for insuring against which is not otherwise provided for by these statutes.

"Sec. 2. Such persons shall make, sign, acknowledge and file in the office of the insurance superintendent a declaration of their intention to form a company under the provisions hereof, which declaration shall contain a copy of the charter proposed to be adopted by them, which charter shall state:

"*First*—The name of the corporation and the place where the principal office for the transacting of business shall be located.

"*Second*—The amount of capital stock, the number of shares thereof and the amount of each share.

"*Third*—The designation of the general officers and the number of directors or trustees.

"*Fourth*—The mode and manner of electing directors or trustees, filling vacancies in their number and their term of office.

"*Fifth*—The period for the commencement and termination of their fiscal year.

"*Sixth*—That they associate for the purpose of transacting the business of casualty insurance, stating the nature and kind thereof, which may include such kinds of business as are specified under subdivisions 1 and 2 of section 1 hereof, or under subdivisions 3, 4, 5, 6 and 7 of section 1 hereof, and that no policy shall embrace more kinds of insurance than are specified in one of the subdivisions named in section 1 of this act.    *    *    *

"Sec. 3. No such corporation for any of the purposes specified in this act shall do business with a capital stock of less than $100,000.00 fully paid in in cash, with an additional $50,000.00 fully paid in cash for every kind of insurance, more than one, which it is authorized to do: *Provided*, that it may not do the business named in subdivision 2 of section 1 hereof on a capital of less than $200,000.00 fully paid in in cash.    *    *    *

"Sec. 7. Any casualty insurance corporation organized under the laws of any other State or foreign country may be admitted to transact business in this State by filing with the insurance superintendent for his approval, the following documents and papers:

"*First*—An application for license to do business in this State, setting forth the full name of the corporation, the location of its principal office of business, and, separately, the several kinds of business to be transacted.   *   *   *

"*Second*—A certificate of deposit from the State official, having the custody of the securities showing to the satisfaction of said insurance superintendent that the corporation has the amount of funds required by this act to be deposited by companies incorporated in this State invested in securities deposited with the superintendent of the insurance department, State Treasurer or other proper officer of the State in which it is incorporated, if incorporated in the United States, and if a foreign corporation, then in some one of the States of the United States.   *   *   *

"*Third*—A duly certified copy of its charter and by-laws together with a certificate from the insurance superintendent or other proper officer of the State wherein incorporated, that the corporation is duly organized and licensed to transact the business of casualty insurance in such State, stating separately the different kinds of insurance as provided in section 1 of this act.   *   *   *

"*Fourth—A complete statement of the financial condition of the corporation.*] All such corporations admitted to transact business in this State must comply with the laws governing like corporations organized under the laws of this State, except that such corporations as are at the date of the passage of this act admitted to transact in this State more than four of the kinds of business named in subdivisions of section 1 hereof, may continue such business on a capital of not less than $200,000.00, and all

such corporations and all persons acting as agents thereof shall be subject to the same penalties prescribed by these statutes relating thereto for a violation of any of the provisions thereof and to the same methods for the enforcement of such penalties. The said company shall apply annually to the insurance superintendent for a certificate for each of its agents to do business in this State."

It is alleged in the petition that, in and by its charter, petitioner is authorized to transact a general insurance business, including the various lines of insurance named in subdivisions from 1 to 6 inclusive of section 1; that in April, 1898, petitioner filed with the defendant application for license to enter into and transact lines of business in Illinois, known as credit insurance, being the line of insurance mentioned in subdivision 3 of section 1, as above set forth, in accordance with the laws of Illinois; that petitioner in all other respects did comply with the laws of Illinois concerning the issuance of said license; that defendant issued to petitioner a license to transact in Illinois the business of credit insurance; that petitioner complied with the laws of Illinois in regard thereto, and entered upon said business within this State, and has continued to transact the same ever since; that petitioner afterwards in April, 1899, made application to defendant, as State Insurance Superintendent, for license to transact all said lines of insurance mentioned in said subdivisions from 1 to 6 inclusive of said section 1, and filed with the defendant all papers made necessary by law for the obtaining of such license; that petitioner was informed by defendant, that it was the ruling of the insurance department of the State of Illinois, that, under the laws of the State, no license could be granted to any one company to do all of the aforesaid lines of insurance, and that no insurance company, licensed to transact the lines of business prescribed in subdivisions 1 and 2 as above set forth, could be licensed to transact any of the others, and that no company, licensed to transact any of the

187—9

said other lines, could be licensed to transact any of the lines of business named in said subdivisions 1 and 2; that, in March, 1900, petitioner again applied to defendant for license to transact in Illinois all of the lines of insurance in said subdivisions mentioned, and complied with the laws and prerequisites of the State of Illinois necessary for the transaction of casualty insurance, and filed all papers and documents required to that end, and tendered all fees required by said law for said license, but that defendant refused said license upon the alleged ground, that the statute of Illinois did not permit the issuing of a license to any one company to transact the lines of insurance named in said subdivisions 1 and 2 if the said company was transacting any of the lines of business mentioned in said subdivisions 3, 4, 5 and 6; that petitioner reluctantly and under protest accepted and received a license to transact in Illinois lines of insurance mentioned in said subdivisions numbered 3, 4, 5 and 6, but, nevertheless, insisted upon its right to have said license also include the lines of insurance mentioned in subdivisions 1 and 2, and demanded the issuance of a license covering all the lines of business; that defendant, for the reasons above stated, refused to grant the same; that afterwards, on May 14, 1900, petitioner again made application for license to transact in Illinois said lines of insurance business mentioned in said subdivisions 1 and 2, in addition to the lines of insurance business for the transaction of which the petitioner then held license as aforesaid; that petitioner filed all papers and documents required by section 7 of the statute above set forth, and tendered all lawful fees, but its application was again refused; the petitioner avers that the holding of the insurance department of the State of Illinois is not in accord with the proper meaning and construction of the statute, but that, under said statute, petitioner is entitled to receive a license to transact in Illinois all the lines of insurance business mentioned in said subdivision.

ALSCHULER & MURPHY, for the relator.

PERRY A. HULL, for the respondent.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

It is conceded, that the petitioner has the right to transact in Illinois the business of credit insurance, burglary insurance, glass insurance and boiler and elevator insurance as specified in the third, fourth, fifth and sixth subdivisions of section 1 of the act of April 21, 1899, as set forth in the statement preceding this opinion. The object, sought by the application for the present writ of *mandamus*, is to compel the defendant to issue a license to the petitioner to transact the business of insurance against bodily accident and employer's liability, as specified in subdivisions 1 and 2 aforesaid, in addition to the four lines of insurance business, which it is already licensed to transact.

The defendant, as State Insurance Superintendent, holds that, under the sixth paragraph of section 2 of said act, neither credit indemnity, as described in subdivision 3, nor any the other branches of business, subsequently enumerated in subdivisions 4, 5, 6 and 7, can be combined with the business of accident insurance and employer's liability insurance as specified in subdivisions 1 and 2 of section 1. The question for determination is, whether a foreign corporation, which has been licensed to do business in this State under said subdivisions 3, 4, 5 and 6 of section 1 of the act, can join thereto and combine therewith the kinds of business mentioned in subdivisions 1 and 2 of said section 1. In other words, there is here presented for construction the meaning of the following words in subdivision 6 of section 2 of the act, to-wit: "Which may include such kinds of business as are specified under subdivisions 1 and 2 of section 1 hereof, or under subdivisions 3, 4, 5, 6 and 7 of section 1

hereof." The defendant holds, that the first and second subdivisions of section 1 constitute one group, and the remaining subdivisions constitute another group; and that no company can be organized in this State to transact the kinds of business embraced in more than one of said groups; that is to say, that a company, organized to do the business of the subdivisions or any one of them named in group 1, cannot transact any of the business named in the subdivisions of group 2, and *vice versa;* and the department further holds, that the same rule is applicable to foreign companies, not excepted by the act itself.

The contention of the defendant, as above set forth, is based upon the fact, that the word, "or," is used in that portion of subdivision 6 of section 2, which is above quoted. Section 2 requires the making, signing, acknowledging and filing in the office of the insurance superintendent a declaration of intention to form a company under the provisions of the act, and requires that such declaration shall contain a copy of the charter proposed to be adopted, and then proceeds to specify what said charter shall state. The sixth statement, required to be made by the charter, is that the corporators "associate for the purpose of transacting the business of casualty insurance, stating the nature and kind thereof, which may include such kinds of business as are specified under subdivisions 1 and 2 of section 1 hereof, or under subdivisions 3, 4, 5, 6 and 7 of section 1 hereof." The language of subdivision 6 of section 2, as thus quoted, is not positive or restrictive in its terms, but is simply permissive. There is therein no positive prohibition against companies engaging in all the different kinds of business specified in section 1.

Certainly, no considerations of public policy or business judgment suggest such a classification as is here contended for. It is not apparent why a corporation, authorized to write credit or burglary insurance should

be permitted to write insurance on glass or boilers, and against accident from explosions, and yet be prohibited from writing insurance against bodily accident, or employer's liability. It is not apparent why a company, doing a boiler or elevator insurance, can combine insurance on plate glass, credits and burglary, while a company, doing personal injury and employer's liability business, can combine with its business none of the above suggested lines.

In view of these considerations, and of the language used in the enacting clause of section 1 of the act, and in other parts of the act, it is clear that the word "or" in subdivision 6 of section 2 must be construed to mean "and."

Sutherland, in his work on Statutory Construction, (sec. 252,) says: "The popular use of 'or' and 'and' is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context."

"In order to effectuate the intention of the testator or legislature, the word 'and' is sometimes considered to mean 'or,' and *vice versa.*" (2 Am. & Eng. Ency. of Law, —2d ed.—p. 333).

In *Boyles* v. *McMurphy*, 55 Ill. 236, this court had under consideration the meaning of the word, "or," as used in the dower statute of the State which was then in force; and it was there held, that the eleventh section of that statute, which declared the effect of the renunciation of the will to be, that "such widow shall thereupon be entitled to dower in the lands *or* share in the personal estate of the husband," was not to be construed as confining the widow to a right to dower in the lands or her share in the personalty, the one or the other, the tenth section having provided that she may elect "to take her dower

in the lands *and* her share in the personal estate of her husband." In *Boyles* v. *McMurphy, supra,* we said (p. 239): "Without stopping to define the precise significance of the disjunctive conjunction, 'or,' as used in this provision of the statute, we are well satisfied, that a true construction does not give to it the alternative sense contended for by plaintiffs' counsel, of an option to the widow to take only the one or the other, dower, or share in the personal estate, but that she may not take both together. We think she is entitled to both, in this case, and that the court below rightfully adjudged to her dower." (See also *Blemer* v. *People,* 76 Ill. 265; *Newland* v. *Marsh,* 19 id. 376).

The first or enacting clause of section 1 provides, "that any number of persons not less than thirteen, may, in the manner hereinafter prescribed, form a corporation for the purpose of issuing policies for any of the following kinds of insurance business." Then follow descriptions of the six kinds of insurance business, to transact which license is demanded by the petitioner. The persons specified, not less than thirteen in number, are authorized, not to form *corporations* for the purpose of issuing policies for "any of the following kinds of insurance business," that is to say, to form a separate corporation for the purpose of issuing policies for each of such kinds of insurance business; but such persons are authorized to form *a corporation* for the purpose of issuing policies for "any of the following kinds of insurance business." "Any," as here used, means "all" or "every." In *People* v. *Fidelity and Casualty Co.* 153 Ill. 25, we said: "The expression 'any kind of insurance' will apply to all kinds of insurance." Bouvier, in his Law Dictionary, says that the word "any" is given the full force of "every" or "all." (*Logan* v. *Small,* 43 Mo. 254; *McMurray* v. *Brown,* 91 U. S. 257; *Davidson* v. *Dallas,* 8 Cal. 227; *Overseers of Manchester* v. *Guardians of St. Pancras,* 4 Q. B. Div. 409; *County of Chicot* v. *Lewis,* 103 U. S. 164). "The word 'any' is frequently used in the sense of 'all' or 'every,' and when thus used has a very

comprehensive meaning." (2 Am. & Eng. Ency. of Law,— 2d ed.—p. 414).

The enacting clause of section 1 of the act authorizes the formation of a corporation for the purpose of issuing policies for every or all of the kinds of insurance business mentioned in section 1. According to the construction given to the act by the defendant, the word "any," as used in section 1, cannot mean "either," because it is admitted that license may issue to one company to do the two kinds of insurance business mentioned in subdivisions 1 and 2, or to do the four kinds of insurance business mentioned in subdivisions 3, 4, 5 and 6. This construction negatives the giving of any other meaning to the word "any" than that it refers to more than one. If the corporation may issue policies for "any" of the kinds of insurance business named in the section, then it may as well issue such policies for all of such kinds of business as for any number of the same greater than one. The language, used in the subdivision or paragraph 6 of section 2, must be construed in connection with the language of the first or enacting clause of section 1, and, when so construed, the word "or" can have no other meaning than the word "and."

Section 6 provides, "that no policy shall embrace more kinds of insurance than are specified in one of the subdivisions named in section 1 of this act." This prohibition is against the issuance of a policy by the company, which shall embrace more than one kind of insurance, but does not necessarily contain any limitation of the right of the company to issue policies for all the kinds of insurance named. On the contrary, the restriction of each policy to one kind of insurance, as named, implies and involves the right to issue a number of policies, provided only that each shall be for a different kind of insurance.

Again, section 3 provides, that "no such corporation for any of the purposes specified in this act shall do business with a capital stock of less than $100,000.00, fully

paid in in cash, with an additional $50,000.00 fully paid in cash for every kind of insurance, more than one, which it is authorized to do." This language implies the authority of the company to do more than one kind of insurance business, provided it pays in in cash an additional $50,000.00 for each kind. The language thus quoted from section 3 contains no limitation as to the number of kinds of insurance business which may be transacted. Authority is evidently given to do all of the kinds of insurance business named in section 1, provided only an additional $50,000.00 of capital stock is paid in in cash for each kind of insurance business so transacted.

The language, contained in paragraph 4 of section 7 in regard to foreign insurance companies, which refers to such corporations as are at the date of the passage of the act admitted to transact in this State more than four of the kinds of business named in said subdivisions of section 1, contains no implication that such corporations are forbidden to transact more than four kinds of business, but merely requires that, where they did transact more than four kinds of insurance business before the passage of the act, they shall only be required to continue their business on a capital of not less than $200,000.00. By the terms of section 3, requiring an additional $50,000.00 to be fully paid in cash for every kind of insurance business more than one which is authorized to be done, the capital required might be largely in excess of $200,000.00. Section 4 was merely designed to relieve such foreign companies from increasing the capital to more than $200,000.00 in the cases therein specified.

Our construction of the act is, that domestic companies, or companies organized under the act of April 21, 1899, are authorized to transact all of the kinds of insurance business mentioned in section 1. If this is true in regard to domestic companies, it must be true also in regard to foreign companies, because, under the repeated decisions of this court, foreign corporations are placed

upon an equal footing with domestic corporations.   The general statute, which requires that foreign corporations shall have no other or greater powers than domestic corporations, contains a direct implication that such foreign corporations shall have equal powers with domestic corporations of like character.   The purpose of our statute is to produce uniformity in the powers, liabilities, duties and restrictions of foreign and domestic corporations of like character, and to bring them all under the influence of the same law. (*Stevens* v. *Pratt,* 101 Ill. 206; *Santa Clara Female Academy* v. *Sullivan,* 116 id. 375; *Barnes* v. *Suddard,* 117 id. 237; *Granite State Provident Ass.* v. *Lloyd,* 145 id. 620; *Pennsylvania Co. for Insurance on Lives* v. *Bauerle,* 143 id. 459).

For the reasons above stated, an order will be entered directing the issuance of the writ of *mandamus* as prayed for in the petition herein filed.          *Writ ordered.*

BOGGS, C. J., and CARTER, J., dissenting.