## Samuel H. Bradbury, et al., v. The Waukegan and Washington Mining and Smelting Company, a corporation, et al.

### Gen. No. 4,306.[1]

1. DEMURRER—*what admitted by.* While a demurrer admits the truth of each of the specific allegations of fact contained in the bill, yet it does not admit the general legal conclusions drawn therefrom by the pleader.

2. MINING CORPORATION—*when, not doing business in Illinois within the meaning of section 26 of General Incorporation Act.* A mining corporation having no properties and doing no mining or smelting business in this state is not doing business within this state within the meaning of the statute referred to, merely by opening an office within the state and placing a safe and other furniture therein for the convenience and use of the secretary and treasurer of the company, notwithstanding stock certificates may have been issued from such office, the books kept, and directors meetings, etc., held there.

3. FOREIGN CORPORATIONS—*comity with respect to.* When a corporation chartered under the laws of a foreign state enters this state for the purpose of transacting business, it comes by virtue of the comity existing among the states, and our courts recognize it as a legal entity, capable of contracting and being contracted with, of suing and being sued, and to exercise generally such powers as are granted it by its charter, subject to such liabilities, restrictions and control as may be prescribed by our own public policy and statutory regulations. If, in the exercise of these functions, crimes are committed, penalties incurred, or contractual liability ignored, redress may be had in the courts of this state, and in such cases jurisdiction does not depend upon whether the corporation is doing business generally in this state, but

attaches in the one case to enforce a public law and in the other to compel the observance of a contract.

4. FOREIGN CORPORATION—*when courts of this state will not appoint receiver for.* Courts of equity in this state will not take jurisdiction of a controversy relating to the internal management of a foreign corporation at the suit of a stockholder when no question of public concern is involved, and especially is this true where all of the property of such a corporation with which it carries on the business for which it was created is located in the state granting its charter.

5. ULTRA VIRES ACTS—*defined.* An *ultra vires* act is one beyond the express or implied powers of the corporation.

6. ULTRA VIRES ACTS—*what are not.* It cannot be said that matters which pertain to the manner in which stock is issued, the price paid or to be paid therefor, the manner in which such stock is voted, and the use which is made of the money arising from the sale of stock, are acts *ultra vires.*

7. JURISDICTION—*what does not confer.* Where the question of jurisdiction is one pertaining to the subject-matter of the controversy, the entry of an appearance or the filing of a demurrer or an answer will not confer jurisdiction; but where the question of jurisdiction pertains to the subject-matter, rather than to the parties, the court may at any time, upon its own motion, interpose the objection of want of jurisdiction.

Proceeding by stockholders against foreign corporation for receiver and other relief. Appeal from the Circuit Court of Lake County; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed April 14, 1904.

R. W. COON, for appellants.

ELAM L. CLARKE, for appellees.

MR. JUSTICE VICKERS delivered the opinion of the court.

Samuel H. Bradbury and others, stockholders in the Waukegan and Washington Mining and Smelting Co., filed a bill in chancery against the corporation and its officers and directors, charging certain unlawful acts, and praying for an injunction, an accounting, and for the appointment of a receiver to take charge of the company's affairs until a reorganization could be had, and other relief.

The bill charges that the corporation was organized under the laws of the State of Washington, and the articles of incorporation filed as an exhibit to the bill declare the object for which the corporation was formed to be: "To

locate, buy, sell, own, develop and operate mines of gold, silver, lead, copper, and other ores, and to engage in and carry on the business of quartz and placer mining, * * * in the State of Washington, and in any other state or place within the jurisdiction of the United States, * * * the Province of British Columbia and Dominion of Canada." The capital stock of the company was $1,200,000; its principal place of business, Bossburg, Stevens county, Washington. The articles of incorporation were filed April 3, 1899, and provided for a duration of fifty years. The company owned a large number of mining claims in the State of Washington, some of which it is claimed are very valuable, and on which large sums of money have been spent for development work.

The bill charges the officers of the company with illegal and fraudulent acts in their dealings with complainants and other stockholders, and with the company, and with a wrongful and illegal use of the money and stock of the company, for their own gain, and with a reckless and extravagant management of the affairs of the company, which charges are set forth at great length in the bill. It is specifically charged that the defendant company maintained an office in Waukegan, Illinois, where the secretary and treasurer kept the books and accounts of the company and its stockholders, and that the principal officers of the company and a large number of the stockholders were residents of Lake county, Illinois, and a majority of the stockholders resided in this state; that the shares of stock were issued from the Waukegan office, and that frequent meetings of the board of directors had been held in the city of Waukegan, and that official notices relating to the business of the company were published in Waukegan, and on the stationery used, Waukegan was designated as the "main office;" that the company rented an office, bought furniture and a safe, and placed it in the office for the use of the secretary and treasurer.

In connection with these specific allegations, it is charged in general language that the Waukegan and Washington

Mining and Smelting Company was a foreign corporation doing business in this state. The prayer of the bill is, that there may be an accounting, under the order of court, by said officers and directors, of the amounts of money received by them, and that the amount of stock entitled to be issued may be determined upon, and the rights of the stockholders who have subscribed for stock may be determined; that the stock of said company, illegally and fraudulently issued, may be cancelled or annulled, or that the parties receiving the same, or upon whose order it was issued, be ordered and compelled and directed to settle and pay for the same, and that said officers and directors may be restrained and enjoined from claiming to own and controlling and selling as their property, or issuing to themselves, stock for which they have not paid in money or in any valuable consideration, and from selling and issuing to other parties or persons stock for which they have not paid the company, and from appropriating the same for their individual profit and gain, and be restrained from assuming to vote and voting said stock at any stockholders' meeting until the further order of this court; that a receiver be appointed of and for said company, and that said injunction be made perpetual, and for such other and further and different relief as to the court may seem right and equity may require. All of the defendants, except the secretary and treasurer, who was served for the company, demurred to the bill; R. H. Stripe, secretary and treasurer, answered for the company and for himself. In his answer for himself he admits all the charges in the bill, but denies that he was guilty of any of the wrongs charged against the officers and managers. The court sustained the demurrer and dismissed the bill, and this ruling of the court presents the only question for our determination. The contention of appellants is that this controversy is within the jurisdiction of a court of equity in this state for the purpose of granting relief under their bill; that the company was doing business in this state, and for that reason it becomes subject to the jurisdiction of a court of equity, the same as a domestic

corporation, by virtue of section 26 of chapter 32, Hurd's Revised Statutes, 1903, which provides that foreign corporations doing business in this state shall be subject to all the liabilities, restrictions and duties that are or may be imposed upon like corporations organized under the laws of this state.

It is also contended, on behalf of the appellants, that the appellees have waived the jurisdictional question by appearing and demurring to the bill and by taking certain other steps in the cause. The demurrer admits all relevant facts well pleaded in the bill, and while it is charged in the bill that the corporation was " doing business in Illinois," still this is a general conclusion of the pleader drawn from the specific acts charged, and relied on as bringing the company within the purview of the statute above referred to. While the demurrer admits the truth of each of the specific allegations of fact it does not admit that the general conclusion drawn therefrom necessarily or legally follows. Story's Eq. Pleading, section 452, 8th ed. The question whether under the specific averments in the bill the company was doing business within the State of Illinois within the meaning of the statute must be determined from the relevant facts set out in the bill, and not from the general inference sought to be drawn therefrom.

In Mandel v. Swan Land Co., 154 Ill. 177, it is held that the terms " doing business in the State of Illinois " as used in this statute, have reference to the business for which the company was organized, and that resorting to the courts of this state to enforce a contract liability of a shareholder was not " doing business " within the meaning of section 26 of the chapter entitled " Corporations." The cases of Stevens v. Pratt, 101 Ill. 206, Santa Clara Female Academy v. Sullivan, 116 Ill. 375, and Granite State Provident Assn. v. Lloyds, 145 Ill. 620, all of which are referred to in the Mandel case, and distinguished, are not inconsistent with the Mandel case for the reason in each of the last cited cases the companies were doing the business for which they were incorporated in this state. The Farmers Loan Co. v.

Lake Street Elevated R. R. Co., 173 Ill. 439, cited and relied on by appellants, is a case where the Farmers Loan Company, a corporation of New York, had assumed to act as trustee for an Illinois corporation, had certified its bonds, appointed an agent to superintend the sale of the bonds, inspect the books and assume other active duties in respect to the trust, and it was held that under these facts the corporation was doing business in this state and that the New York company could not execute this trust in this state without complying with section 6 of the amended act of 1889 in relation to trust companies requiring a deposit of $200,000 with the auditor, before transacting a trust business in this state. There is nothing in this case that in any way modifies the rule laid down in the Mandel case, since the court there holds that the New York corporation was doing business as a trust company, and under section 26 of our Corporation Act it must comply with section 6 of the act relating to domestic trust companies, thus placing the foreign and domestic corporation doing a like business in this state, on a basis of equal liability, which is the real purpose accomplished by section 26 of our Corporation Act.

The latest case which we have been able to find, and the one on which counsel rely with much confidence, is Harding v. American Glucose Co., 182 Ill. 551. That case is not in conflict with the rule laid down in the Mandel case. The American Glucose Company was a New Jersey corporation but carried on its business at Peoria, Illinois, where it owned real estate and an extensive plant used in the manufacture of glucose and other products. All the business the company did was in this state. Certain of the officers of the company entered into an illegal combination with five other corporations engaged in the same general line of business for the purpose of organizing a trust, the ultimate purpose of which was to give the Glucose Sugar Refining Company, which was the merger company, the monopoly of the market on the products of all the conspiring companies. Certain of the stockholders filed a bill to enjoin the proposed transfer of the

property of the company to the Glucose Sugar Refining Company, and the bill was sustained on the ground that the proposed trust was in violation of the public policy of the State of Illinois, as evidenced both by judicial decisions and enactments of the law-making power of the state. In the opinion filed in this case (at page 637) it is said: "If real estate in Illinois, owned by a domestic corporation, cannot be used for the purpose of an illegal trust or combination, real estate in Illinois, owned by a foreign corporation, cannot be used for such a purpose." While the American Glucose Company owned its property in this state and carried on its business here, and was therefore within both the spirit and letter of section 26 of the Corporation Act, yet the jurisdiction in that case might well rest upon the broad ground that a charter from another state could not legalize acts in this state which would otherwise be in contravention of a well-established public policy and in open violation of our statute; and where, as in the Glucose case, these acts were also likely to cause irreparable injury to the private rights of stockholders, a court of equity would take jurisdiction to prevent the threatened injury to private rights which would result from the violation of a public statute. This is, as we understand the Glucose case, the substantial ground upon which the jurisdiction of the court is based.

In none of the cases above referred to, nor to which our attention has been called, was the controversy in relation to what may be termed the internal affairs of the corporation, but they were cases arising from some contractual relation with the company, and in this respect are distinguishable from the case at bar. The Glucose case is an apparent exception, but while that may be said to be a controversy relating to the internal affairs of the corporation, still the jurisdiction in that case, as already shown, rests on the ground that the company was not only doing business in this state, but the proposed action of its managers and officers which was sought to be enjoined was in furtherance of an illegal combination in violation of our anti-trust law of June 11, 1891.

Bradbury v. Waukegan & Washington Mining Co.

If the jurisdiction of the court could be held to depend on whether the corporation was doing business in this state, within the meaning of section 26 of the corporation law, as construed in the Mandel case, the facts alleged in this bill, aside from the general inference drawn therefrom, wholly fail to show that the company was doing business in this state. Opening an office in Waukegan and placing a safe and some office furniture therein for the convenience and use of the secretary and treasurer where he issued certificates of stock, kept the books, and the holdings of directors' meetings there, together with the other acts charged to have been done in Lake county, bear no resemblance to the powers and objects of this corporation, as set forth in the articles of incorporation. There is no pretense that the company owned any mining properties in this state, or that it was doing a mining or smelting business here. All of its mining properties were in the State of Washington and not in Illinois.

If under the facts alleged in this bill a court of equity in Illinois should assume jurisdiction of this cause, appoint a receiver and take charge of the business affairs of this corporation, why may not a court of equity in another state where stockholders reside and whose rights are violated by the alleged mismanagement of the corporate affairs, entertain a bill for the same purpose? When a corporation chartered under the laws of a foreign state enters this state for the purpose of transacting business, it comes by virtue of the comity existing among the states, and our courts will recognize it as a legal entity capable of contracting and being contracted with, of suing and being sued, and of exercising generally such powers as are granted it by its charter, subject to such liabilities, restrictions and control as may be prescribed by our own public policy and statutory regulations. Bank of Washtenaw v. Montgomery, 2 Scam. 422; Stevens v. Pratt, 101 Ill. 206; Santa Clara Female Academy v. Sullivan, 116 Ill. 375; Barnes v. Standard, 117 Ill. 237; Freie v. Fidelity Building and Savings Union, 166 Ill. 128; The People, ex rel. v. James R. B. Van Cleave, 187

Ill. 125. In the exercise of these functions, any crimes committed, penalties, fines or forfeitures incurred by the violation of our laws, or any contractual liability to a citizen incurred, may be redressed in our courts, and in such case, the jurisdiction does not depend on whether the corporation is doing business generally in this state, but the jurisdiction attaches in the one case to enforce a public law of the state against an offender, and in the other to enforce a contract, and in any case falling under either of these classes it is wholly immaterial from what foreign state or government the company derives its chartered powers, or to what extent it is doing business in this state. But where the act complained of affects the complainant only in his relation as a shareholder or officer of the corporation, and no public right is involved, then the controversy must be said to relate to the internal affairs of the company; and in case of a foreign corporation the great weight of authority is opposed to the jurisdiction of the court of equity. Cook on Corporations, 5th ed., sec. 734. What controversies relate to the internal management of the corporation is clearly defined by Stone, J., in North State Copper & Gold Min. Co. v. Field, 64 Md. 154, and substantially supports the above statement. The Field case is followed by the Supreme Court of Pennsylvania in Madden v. Penn. Electric Light Co., 181 Pa. St. 617 (also in 38 L. R. A. 638), where it is held that a court of equity of that state will not interfere with the internal management of a foreign corporation, even though the company has a large amount of visible, tangible property within the State of Pennsylvania. The same parties were again before the Supreme Court in Madden v. Penn. Electric Light Co., 199 Pa. St. 454, with an amended bill, and the doctrine was again announced that the courts of that state would not take jurisdiction of matters relating to the internal management of foreign corporations on a dispute between such corporations and one or more of its stockholders. In Hallenborg v. Greene, 66 N. Y. App. Div. 590, a case in many respects like the one at bar, that court follows the Madden

case, 181 Pa. St., and holds that where the judgment and subject-matter of the litigation would relate strictly to the internal affairs and management of a foreign corporation, the court should decline jurisdiction because the questions are of local administration and should be relegated to the courts of the state or country under the laws of which the corporation was organized. The question came before the Supreme Court of Virginia in Taylor v. Mutual Reserve Fund Life Assn., 97 Va. 60, and it was there said: "It seems to be well settled that courts will not interfere with the management of the internal affairs of a foreign corporation. Such questions are to be settled by the tribunals of the state which created the corporation." Wilkin v. Thorne, 60 Md. 253, Kansas Construction Co. v. Topeka R. R., 135 Mass. 34, and Kimball v. St. Louis Railway, 157 Mass. 7, are all cases in line with the doctrine of the New York and Virginia cases cited above.

While no case involving the precise question now under consideration appears to have come before the Supreme Court of this state, still upon reason and authority of other courts of the highest standing we hold that a court of equity should not take jurisdiction of a controversy relating to the internal management of a foreign corporation at the suit of a stockholder when no question of public concern is involved, and especially in a case like the one at bar, where all of the property of the company with which it carries on the business for which it was created is located in the state granting its charter.

It is contended that the acts of appellees set forth in the bill, and which are sought to be enjoined, are *ultra vires* and void, and that this gives a court of equity jurisdiction to prevent them by injunction. An *ultra vires* act is one beyond the express or implied powers of the corporation. If the act is one which might be done by the managing board or by a majority of its stockholders, in meeting assembled, the act is *intra vires*, although done by the managing board or directors, and in opposition to the will of a

majority of the stockholders. Cook on Stocks and Stockholders, 5th edition, sec. 683, and authorities cited in note.

The test seems to be, if the act is one which could be legally performed, when concurred in by the majority of the stockholders, then it is not *ultra vires*. By reference to the bill it will be seen that the acts complained of relate mainly to the manner of issuing stock, the price paid or to be paid, the manner in which the stock is to be voted in stockholders' meetings, the use that should be made of the money arising from the sale of the stock, and acts of like character, all of which are charged to be *ultra vires* and void. The mere charge that an act is *ultra vires* in the bill is an inference drawn by the pleader and is not conclusive, but it must be determined from the character of the act and in the light of the powers conferred by the charter. We have no doubt if this company, incorporated for mining purposes, should undertake to build a railroad, or engage in any other enterprise in this state outside of and beyond the scope of its corporate powers, that a court of equity would lend its aid to prevent such *ultra vires* act at the suit of a minority stockholder; but no such act is threatened in this case. The whole controversy relates to the internal management of the affairs of the corporation, which must be relegated to the courts of the State of Washington.

It is contended by appellants that the appellees, by demurring and taking other steps in the court below, submitted themselves to the jurisdiction of the court. If the question related merely to the jurisdiction of the persons, there would be much force in the contention; but the question is one going to the subject-matter of the controversy, and in such cases the entry of appearance of the parties by answer or otherwise does not vest the court with jurisdiction. The court of its own motion may interpose the objection of want of jurisdiction over the subject-matter at any time. Kimball v. Walker, 30 Ill. 482; Gage v. Schmid, 104 Ill. 106.

The decree dismissing the bill was proper and the same is therefore affirmed.

*Affirmed.*