KANSAS AND EASTERN RAILROAD CONSTRUCTION COMPANY & another *vs.* TOPEKA, SALINA AND WESTERN RAILROAD COMPANY & others.

Suffolk.   Jan. 25, 26. — April 6, 1883.   FIELD & W. ALLEN, JJ., absent.
HOLMES, J., did not sit.

A foreign construction company cannot maintain a bill in equity in this Commonwealth against a foreign railroad corporation and a citizen of this Commonwealth, to enforce specific performance of a covenant in a contract for the delivery of bonds and certificates of stock in payment of work to be performed by the construction company in a foreign state, and to restrain by injunction the citizen of this Commonwealth from disposing here of shares of stock and bonds of the railroad company, alleged to have been delivered to him in violation of the plaintiff's rights, although the railroad corporation has an office in this Commonwealth for the transfer of shares of its capital stock, and has appeared by attorney in the suit.

DEVENS, J.   This is a bill in equity, brought by a construction company, organized under the laws of the State of New Jersey, and William H. Rollins of Portsmouth, New Hampshire, against a railroad corporation organized under the laws of the State of Kansas for the purpose of constructing and operating a railroad therein, and against Charles G. Patterson, of Boston in this Commonwealth, and Weston Arnold, of Council Grove, Kansas. The case comes before us on an appeal by the plaintiffs from a decree, made by a single justice of this court,

sustaining demurrers filed by the several defendants, and ordering the bill to be dismissed.

The bill sets forth a contract made between the construction company and the railroad company, together with a supplementary contract, which we treat as a part of it, by which the construction company agreed to build, upon certain terms and conditions, a railway in Kansas, and the railroad company was to pay therefor its whole issue of mortgage bonds at the rate of $17,000 per mile, and seventeen twentieths of its capital stock, less the amounts to be delivered to certain cities and towns which had made subscriptions therefor. By the terms of the contract, the construction company was not only to build the road, but to pay to Arnold, as trustee for certain persons entitled thereto, the sum of $20,000. Who these persons were does not fully appear, but they are described as persons who had previously rendered services to, or advanced money for, the railroad company. Upon payment of the sum of $20,000, the certificates for seventeen twentieths of the capital stock were to be handed to the plaintiff Rollins, to hold as trustee of the construction company, to be delivered to it as from time to time the general manager of the railroad company might direct. The construction company was to receive all the property which the railroad company might hold, together with all the subscriptions which had been made by cities or towns, except the sum of $34,000, which was to be paid to Arnold as trustee; and, as such trustee for the benefit of " those entitled thereto," Arnold was to receive ten per cent of the profits of the construction company.

The bill avers that the railroad company has refused to perform its part of this contract; that it has since made a contract with the defendant Patterson for the construction of the same railway, to be paid for in shares of stock and bonds; and that Patterson now advertises the same for sale in Boston. The bill further avers the payment of the $20,000 to Arnold, and the willingness of the construction company to do all on its part yet to be done in the construction of the road. The contract between the construction company and the railroad company is an exceedingly complicated one, and, in many respects, not easy to be construed. The outline we have thus given, with such of its

details as may be referred to hereafter, is sufficient for the purpose of this opinion.

The prayer of the bill is that the railroad company and Arnold may be compelled specifically to perform their contract, to make all such conveyances to the plaintiffs as they are bound to make, and generally to do all such acts as are necessary for carrying out the contract; and especially that the railroad company now be ordered to deliver seventeen twentieths of the capital stock, less the deductions it was entitled to make therefrom, to the plaintiff Rollins, as trustee for the construction company, and three twentieths to the defendant Arnold as trustee for those entitled thereto. The further prayer is, that the railroad company may be restrained by injunction from doing any acts under its so-called contract with the defendant Patterson, or delivering to him any of its shares of stock or its bonds, or other property; that the defendant Patterson may be restrained from offering to sell, or selling, any of the bonds or shares of stock in the railroad company that may have been delivered to him; and that he may be compelled to surrender the same to the construction company, averring that he had full notice of the agreement between the construction company and the railroad company.

No act is alleged to have been done, nor as intended to be done, in this State, except the proposed sale by Patterson of shares of stock and bonds issued to him under the second contract alleged to have been made with him.

The contract between the construction company and the railroad company is one the validity of which must be determined by the law of the State of Kansas. It was to be executed there in all important particulars; it concerned a public work to be constructed there, to which the cities and towns in that State had made subscriptions, and all the rights, duties and obligations of the railroad company were derived from, or imposed by, the law of that State, from which it received its corporate existence. Whether a contract would there be valid, which seeks to transfer all these rights, obligations and duties, together with the control of the railroad company and of all the shares of stock and bonds which it has the right to issue only for the purpose of building its road, either to the construction company or to a trustee "for the benefit of persons entitled thereto," in consideration of

the covenants by the construction company to build the road, it is not necessary for us to consider. If we assume it to be valid, and we certainly do not intend so to decide, the difficulty in the plaintiffs' case would not disappear. It would still be impossible for us to enforce any specific performance of such a contract.

Much of the argument of the construction company treats the subject-matter of the suit as if it only concerned the delivery of the certificates of stock, or as if the suit might be thus limited. The agreement to deliver these certificates cannot be separated from the rest of the contract, and the covenants on the one side and the other are mutual and interdependent. The contract as yet is entirely executory. The fact that the construction company has made some preliminary surveys, or has paid $20,000 as a condition precedent to receiving the certificates of stock, cannot take it out of this class of contracts. The work contemplated has never been begun by the construction company, nor has the line ever been located. The delivery of the certificates is a step only in the execution of a contract which many years may be required to complete. To compel the railroad company to deliver the certificates, if we cannot hold the construction company to the performance of the obligations it has assumed, would be obviously unjust. If we are powerless to enforce the contract, so far as burdens are laid by it on the construction company and the covenants made by it, we should decline to enforce any portion of it. *Ross* v. *Union Pacific Railway*, Woolw. 26. *South Wales Railway* v. *Wythes*, 1 K. & J. 186, 202.

Nor, if we are unable to enforce the delivery of the certificates to the construction company, is there any reason why we should interfere to prevent their delivery to the defendant Patterson, with whom the second contract is alleged, or the sale of the stock here by him. The ground urged for enjoining this is that it may prevent the railroad company from performing its obligations under the former contract with the construction company. Such right can be only incidental to our right to enforce the original contract, and must depend upon that. *Ross* v. *Union Pacific Railway, ubi supra.*

The question whether a contract for the construction of a railway can ever be enforced, has been fully considered in many

cases.   *Ross* v. *Union Pacific Railway*, *ubi supra*.   *Fallon* v. *Railroad Co.* 1 Dillon, 121.   *South Wales Railway* v. *Wythes*, *ubi supra ;* and 5 DeG., M. & G. 880.   *Peto* v. *Brighton, Uckfield & Tunbridge Wells Railway*, 1 H. & M. 468.   *Greenhill* v. *Isle of Wight Railway*, 19 W. R. 345.   *Port Clinton Railroad* v. *Cleveland & Toledo Railroad*, 13 Ohio St. 544.   *Danforth* v. *Philadelphia & Cape May Railway*, 3 Stew. Eq. 12.   Whether this contract is capable of enforcement has been also very fully discussed in the case at bar.   It has been argued that a court of equity will not undertake to enforce such a contract, as it is vague and uncertain in its terms, depending, as to these, on the agreement of parties or third persons, as the time when, and the places where, the construction of the road shall begin are yet undetermined, as are its location and general route; and especially as the continuous attention to details which would be required, and the time which would be necessarily employed, would render supervision practically impossible.   These and many other suggestions we have not had occasion carefully to examine, as there are decisive reasons why in the present case there can be no specific enforcement of the plaintiff's portion of the agreement, or of the covenants to be performed by it.

What the construction company agreed to do is to be performed in another State, and directly concerns the administration of the local affairs of that State.   This court cannot protect the railroad company, by any decree which it can render, in the rights which it must have against the construction company, if the latter is to receive this stock.   The liabilities which the railroad company is under in regard to the construction of the railway in Kansas, as well as those which the construction company has assumed, must be determined by the local law of that State, as administered by its appropriate tribunals.   At every step, these must have the right to determine, as occasions for intervention arise, whether the duty imposed upon the railroad company is being performed and the laws of the State observed.   The suit has relation to the performance by the construction company on behalf of the railroad company of the chief functions of the latter as a corporate entity, the building and operation of its railway in Kansas.   As to such a series of acts as are thus involved, this court could certainly exercise no jurisdiction.   It

cannot assume to direct how, when, or where the railway shall be constructed, nor give any direction in relation thereto, nor enforce the obligations which the construction company has undertaken to perform in regard to it.   Were this possible, the difficulty would then be presented which arises from the fact that the construction company is a foreign corporation, having of right no existence here.   Its organization is not subject to our supervision, nor are its officers, its place of business or its property within our jurisdiction.   Its own rights, in making contracts like that here presented, must depend on the local laws which govern its creation, and, whatever these may be, we have no such control over it that we could enforce any decree against it.

This consideration presents also a decisive reason why, as against the railroad company, the contract cannot be specifically enforced, even if the enforcement of it, with justice to both parties, could be limited simply to a decree for the specific delivery of the certificates of the capital stock.   The subject matter of such a claim has no analogy to one that might be made upon a demand as for a debt due according to the generally recognized principles of law, where satisfaction is sought out of property or rights within our jurisdiction, by reason of the authority which the State has over that which is within its limits.   A judgment against a foreign corporation in another State can be operative only to the extent of the property and rights which are there found.   *Smith* v. *New York Ins. Co.* 14 Allen, 336.   The railroad company has no property which has been attached in this proceeding, nor, so far as appears, any in this State.   It has no office for the general transaction of its business, nor any officers for that purpose, except that it has established an office for the transfer of shares of its capital stock.   Whether in a controversy between two persons as to which was entitled to certificates of stock, or to their transfer from one to another, this matter could be subjected to the jurisdiction of this court, need not be discussed.   This inquiry is whether it is within the power, or a part of the duty, of this court to order this foreign corporation to issue certificates of stock, so that the construction company, or those to whom it assigns the certificates, may thus become members of the railroad corporation.

Because this railroad corporation has appeared here by attorney, it has not given this court any right to exercise authority over its organization, its corporate functions, or the relations between the corporation and its members, nor the right to determine who shall be its members; and this court is not invested with any power by which its decree in such matters can be enforced. The determination of the question who shall be entitled to receive from the corporation certificates of its stock, so that they shall thereby become members of it, is one which does not alone affect the external relations of the corporation, but involves its organic laws, which are necessarily local and require local administration. *Smith* v. *New York Ins Co. ubi supra.*

In the case last cited it was held that this court would not entertain jurisdiction of a suit in equity brought by a citizen of Alabama, who had never lived here, against an incorporated mutual life insurance company of New York, to restore him to his rights under a policy upon his life issued by the defendant in New York, he having failed to pay the premiums required by the terms of the policy, although the defendant transacted business in this Commonwealth, and had appointed an agent resident here upon whom all lawful processes against the company might be served, under the Gen. Sts. *c.* 58, § 68; and this upon the ground that the bill sought to establish, by a judgment of this court, the artificial relation of membership in a foreign corporation involving necessarily the peculiar local statute laws of another State. From the nature of corporate stock, which is created by and under the authority of a State, the right or duty to issue it, like the other attributes of the corporation, is governed by the local law of the State from which it derives its existence, and not by that of any other State.

The construction company, for the reasons we have heretofore stated, is not entitled to a decree against the railroad corporation, ordering the certificates of stock to be issued to its trustee. But the construction company further seeks a decree, which shall forbid the railroad company from issuing its shares of stock or its bonds to the defendant Patterson, shall enjoin the railroad company from carrying out the contract with him, and shall compel Patterson to reconvey any property he may have received from the railroad company. None of the acts which the

construction company desires thus to enjoin are, so far as is shown by the bill, to be done in this State, nor is any of the property here which is thus sought to be ordered to be reconveyed. It is averred, however, that Patterson is preparing to sell the shares of stock in this State; and the construction company contends that this question arises in this State, as this wrongful act thus sought to be prevented is to be done here. But the considerations to which we have heretofore adverted directly apply. If we cannot determine to whom this railroad company shall issue its shares of stock, we, on the other hand, cannot forbid its issuing them to those whom it chooses. If it issues shares of stock by authority of the local law which governs it, the sale of such shares in the ordinary mode should not be interfered with. As we cannot establish and enforce the first contract by any decree that we may make for its specific performance, nor indeed pronounce authoritatively whether it is one which should be established and enforced, as it concerns so largely a matter of local law, and as it may be administered by the local tribunals in the place where it was to be performed, we ought not to interfere with the sale of the shares of stock, should any be issued to the defendant Patterson.

*Bill dismissed.*

*G. O. Shattuck & H. W. Swift,* for the plaintiffs.
*W. Gaston & C. L. B. Whitney,* for the defendants.