Grafton,  ⎱
Jan. 2, 1906. ⎰

## WESTMINSTER NATIONAL BANK *v.* NEW ENGLAND ELECTRICAL WORKS *&* a.

Where a certificate of corporate stock, regular in form, properly executed, and containing a statement that the shares represented thereby are fully paid, is issued to an original holder who pays nothing to the corporation therefor, the company is estopped to deny the validity thereof as against a purchaser in good faith and for value, and cannot refuse to recognize the latter as a stockholder or to record the transfer on its books, on the ground that the certificate was illegally issued to, or acquired by, the vendor.

If a banking institution which has no authority to invest its funds in the stock of another corporation accepts such stock as collateral security for a loan and subsequently becomes the owner thereof through the enforcement of its lien, it thereby acquires all the rights of other shareholders.

The right of a *bona fide* vendee of stock to a transfer thereof on the books of the corporation is not a matter relating to the essentially internal management of the company, cognizable only by the courts of the state in which the charter was granted, but is a contractual right which accrued to the purchaser upon his acquisition of the shares and is enforceable wherever the corporation is properly made a party defendant.

One who has notified a corporation of his ownership of its stock is not bound by a subsequent judgment in a suit to which he was not a party, restraining a sale of the shares by his vendor.

A vendee of stock is entitled to a decree for specific performance against a corporation which refuses to perform its implied agreement to transfer the shares to him upon its books, especially when the real and prospective value of the stock depends upon the future development and management of the corporate enterprise.

A director of a bank has no implied authority to bind the corporation by his admissions.

BILL IN EQUITY, praying that the Electrical Works be ordered to issue to the plaintiffs a certificate of stock. Transferred from the November term, 1904, of the superior court by *Pike*, J. The suit was begun as an action at law, but was afterward amended by the filing of this bill in its stead. Some of the stockholders of the Electrical Works were also made defendants.

The plaintiff corporation is located and does business in Massachusetts. The Electrical Works was incorporated under the laws of South Carolina, but has its principal place of business in this state. About the time of the formation of the defendant corporation, a regularly signed certificate for 350 shares of its stock was

issued to one Bibber, for which he paid nothing. In June, 1899, Bibber pledged this certificate to the plaintiffs as collateral security for a loan, and they held it as such security until February 25, 1901, when, by an arrangement between Bibber and the plaintiffs, he formally transferred the certificate to them in part payment of the loan. In these transactions the plaintiffs acted in good faith, having no knowledge of any defect or infirmity in the issuance of the stock.

May 1, 1902, the plaintiffs notified the defendant corporation that they owned the Bibber certificate, and asked for information in regard to the company; and on July 13, 1903, they requested the Electrical Works to transfer the certificate to their name, but the request was not granted. The certificate stated that the shares were fully paid and non-assessable, and that they were transferrable only upon the books of the corporation. By the code of South Carolina, it is provided that "no stock shall be issued by any corporation until fully paid; . . . and no transfers of stock shall be valid except as between the parties thereto, until the same shall have been regularly entered upon the books of the corporation." The business of the Electrical Works has not been thoroughly developed, and its future is problematical. The plaintiffs believe that the stock will ultimately be much more valuable than it now is.

January 3, 1903, certain stockholders of the defendant corporation began proceedings in the supreme court of New York against Bibber, the Westminster National Bank, and the Electrical Works, and obtained an order restraining Bibber from transferring his certificate of stock and restraining the Electrical Works from making any transfers thereof on the books of the corporation. The plaintiff bank was not served with process in that suit and did not appear, although it received information of the pendency thereof.

The defendants offered testimony of what one Greenwood, a director and vice-president of the bank, had said in regard to the way the bank received the stock. The evidence was excluded upon the ground that it did not appear that Greenwood had authority to make admissions against the bank, and the defendants excepted.

The court ordered the Electrical Works, upon presentment of the Bibber certificate properly indorsed, to issue to the plaintiffs a new certificate for the same number of shares, unless the New York judgment is a legal bar to such an order. To this order the defendants excepted.

*Henry F. Hollis*, for the plaintiffs.

*George F. Morris* and *Ben S. Webb*, for the defendants.

1. This action, originally commenced as an action at law to recover of the defendant corporation the value of a certifiate representing 350 shares of its capital stock, was on the day of trial orally amended to a bill in equity praying for a specific performance of the delivery of a new certificate to the plaintiff.  The defendants then seasonably moved to dismiss the bill, there having been an entire change of the action on the part of the plaintiff. The motion to dismiss should have been granted.  The plaintiff is a foreign corporation doing business in Massachusetts.  The defendant corporation was originally organized at Providence, Rhode Island, under the laws of South Carolina.  As the case stands, one foreign corporation is seeking to compel specific performance from another foreign corporation.

The question of granting or withholding a certificate of stock is not a matter affecting the external relations of a corporation or its contracts and obligations to the outside world, but one which affects its internal management solely.  It is a question between the corporation and its stockholders, and another person who is asking to be recognized as a stockholder.  When a corporation deals with the public it is making contracts as an individual, and as an individual it is subject to the laws of the state governing such contracts.  But when a corporation is formed, it is created by the laws of some particular state.  It is a creature of such laws, and all questions affecting its internal management must be construed according to those laws.  The laws of South Carolina are for the interpretation of the South Carolina courts.  Foreign courts will not exercise authority over the organization, corporate functions, or by-laws of such a corporation, nor over the relations between it and its members; and the fact that legal service may be made on the corporation in the foreign jurisdiction is immaterial.  Beale For. Corp., s. 307; *Smith* v. *Insurance Co.*, 14 Allen 336; *Kansas etc. Co.* v. *Railroad*, 135 Mass. 34; *Kimball* v. *Railway*, 157 Mass. 7; *Wason* v. *Buzzell*, 181 Mass. 338; *Richardson* v. *Company*, 181 Mass. 580; *Gregory* v. *Railroad*, 40 N. J. Eq. 38; *Madden* v. *Company*, 181 Pa. St. 617; *Hartley* v. *Welsh*, 23 Pa. Co. Ct. 78; *Amer. Grease Co.* v. *Vogellus*, 23 Pa. Co. Ct. 664; *Morris* v. *Stevens*, 6 Phil. 488; *Commonwealth* v. *Leisenring*, 15 Phil. 215; *Wilkins* v. *Thorne*, 60 Md. 253; *North Star Mining Co.* v. *Field*, 64 Md. 151; *Sudlow* v. *Railway*, 21 Beav. 43.

2. It is an elementary principle of equity jurisprudence, that equity will not ordinarily entertain jurisdiction of cases wherein

the plaintiff has a plain and adequate remedy at law. This principle has long been recognized by the courts of this state. *Eckstein* v. *Downing*, 64 N. H. 248. Want of equity is not only good ground of demurrer, but is a good defence where no case is established upon the merits, including cases where the plaintiff's right proves to be one at law and not in equity. *Burnham* v. *Kempton*, 44 N. H. 78, 95. Allegations of fraud do not now furnish a basis of equitable jurisdiction. *Miller* v. *Scammon*, 52 N. H. 609 ; *Lyme* v. *Allen*, 51 N. H. 242.

Actions at law have been sustained against corporations in this state to recover damages for withholding certificates of stock, and no question has been made but that they have proved adequate remedies. *Pinkerton* v. *Railroad*, 42 N. H. 424 ; *Hill* v. *Bank*, 45 N. H. 300 ; *Scripture* v. *Soapstone Co.*, 50 N. H. 571. It has been decided that as between individuals equity will not compel a specific performance of a contract for the delivery of stock. *Eckstein* v. *Downing*, *supra*. Certainly, to compel such transfers as against non-assenting stockholders, it must be shown that the plaintiff's equitable rights are equal or superior to those of the objecting stockholders. In many states specific performance has been decreed against corporations to compel the issuance of certificates of stock to claimants, but no precedent is discovered for such an action in this state. As was said in *Harris* v. *Willard*, Smith (N. H.) 63, 71, " we have no authorities, no decided cases to guide us. This is not conclusive against the action, but it ought to lead us to be cautious how we tread where there are no footsteps to point out the way ; and this caution is the more necessary as our decision now will be a precedent for future cases similarly circumstanced."

3. It is said that specific performance of contracts in regard to personal property is decreed only where the vendee stands in need of the specific relief which only a court of equity can give; and therefore it is an established rule that relief by decree for specific performance of a contract is not a matter of right in either party, but rests in the discretion of the court. The granting such relief must appear to be entirely equitable. *Pickering* v. *Pickering*, 38 N. H. 400 ; *Eastman* v. *Plumer*, 46 N. H. 464. It is probably true that in so far as the granting or withholding such relief is a subject of discretion, it is for the decision of the superior court; and if the decree depended on the presence or absence of fraud in fact alone, there would be no appeal from the decision of that court. It is not so with fraud in law. The facts being found, this court may or may not agree with the superior court as to whether those facts constitute fraud in law, and may sustain or reverse any decree founded thereon. *Coburn* v. *Pickering*, 3 N. H. 415, 428. When a contract is a fraud in law, it is unnecessary to prove fraud

in fact. *Pearson* v. *Railroad*, 62 N. H. 537, 545. In this case no fraud in fact is found; but we claim that the facts reported constitute fraud in law, which the court will not perpetuate by granting the prayer of the bill.

All stockholders, excepting Bibber, paid approximately $14 per share for their stock, and are on an equality with each other. Bibber paid nothing. "Every share in a corporation is equal to every other share, unless otherwise provided in the charter. Hence it follows that no special privilege or advantage can be given to any member; for every discrimination in favor of a particular member must be made at the expense of the others." 1 Mor. Corp., s. 305. "The agents of a corporation have no authority to receive particular shareholders upon more favorable terms than the other members. An agreement made with a subscriber for shares, whereby the latter is accorded any special privilege or benefit at the expense of the corporation, is invalid. Thus, a shareholder cannot be received on condition that he shall contribute less than other members." *Ib.*, s. 307.

The stock in question was issued to Bibber by Palmer, Nichols, and Price. They expected to gain something by the issue, but it does not appear that Bibber ever promised them anything, and it does appear that he paid nothing for his stock. The transaction, reduced to its lowest terms, is described by the words "voluntary gift." The shares from which this gift was made were treasury stock and assets of the corporation. They were not the property of Palmer, Nichols, and Price to deal with as they saw fit, but were held in trust for the creditors and stockholders of the corporation. Members of the corporation had a right to expect that, as assets of the corporation, such stock would not be given away any more than the cash assets in the bank. The Bibber transaction was made without the formality of a stockholders' or directors' meeting; it divested pre-existing stockholders of one seventh of the value of their stock which they had bought and paid for, relying on such assets; and his stock, if permitted to remain outstanding, will divest them of one seventh of all future earnings of their stock, without the corporation ever receiving a dollar therefor. The transaction at its inception was certainly voidable if not absolutely void. *Despatch Line* v. *Bellamy Co.*, 12 N. H. 205; *Elliot* v. *Abbott*, 12 N. H. 549, 556; *Edgerly* v. *Emerson*, 23 N. H. 555, 567; *Buttrick* v. *Railroad*, 62 N. H. 413, 418; *Hamlin* v. *Brass Co.*, 68 N. H. 292; 2 Cook Corp., ss. 712, 713.

The transaction was not a sale of shares within the ordinary course of business; and even if the directors had acted as a body, or at a meeting regularly called, we deny their legal right to divest the existing stockholders of their property in such an unusual

transaction as this was, looking at it in its most favorable light. In *Dow* v. *Railroad*, 67 N. H. 1, 16, the following language is quoted with approval: " Although general powers of management necessarily include power to sell in the ordinary course of business, such powers do not authorize sales of an unusual description." If the benefit Palmer, Nichols, and Price expected to receive consisted in giving Bibber stock so that they could elect him general manager and put him in a position where, being president of the Bibber-White Company, he could occupy the dual capacity of vendor and vendee, certainly the stockholders had cause to complain. If the gift was compensation to Bibber for becoming a director within a short time thereafter, then it was fraudulent. Palmer, Nichols, and Price, when they issued the certificate to Bibber, committed a fraud upon all non-assenting stockholders, and such stockholders could maintain a bill in equity for the cancellation of the stock in his hands. *Pearson* v. *Railroad*, 62 N. H. 537; *Kimball* v. *Grate Co.*, 69 N. H. 485; 2 Cook Corp., s. 650.

4. The plaintiff is found to be a *bona fide* holder of the stock, for value; but in weighing the equities as between the plaintiff and pre-existing stockholders, it is important to notice that the bank took the stock as collateral with no probable expectation of ownership, at a time when the defendant corporation was in a formative period. The bank did not notify the corporation that it held the stock until May 1, 1902, when it " asked for information in regard to the company." The defendant corporation never having received anything from the issue of the stock, and the plaintiff never having taken interest enough in the stock to notify the corporation of its claim until 1902, it is evident that, although this stock represents a one-seventh interest, the plaintiff has never contributed to the success of the corporation, while presumably the active stockholders have been so doing. If the defendant corporation has wronged the plaintiff by allowing such a certificate to leave its office, it should pay the damage for the wrong committed; but the dissenting stockholders should not be made to suffer from the illegal acts of the corporate officers by having those acts perpetuated by a court of equity, and allowing a certificate so issued to gather in one seventh of all the dividends which may hereafter be declared. From March 20, 1899, up to the day of trial, all the plaintiff expected or asked was the market value of its stock.

The authorities say stock certificates are not negotiable, but are *quasi*-negotiable. " Negotiable is also used in a wide sense to denote an instrument transferable from one person to another by indorsement or delivery, but wanting in the essential of giving the transferee a good title notwithstanding any defect of title in

his transferor.   This quality is also called *quasi*-negotiability to distinguish it from negotiability in the true sense." Rap. & Law. Dict. This seems to be supported by the authorities to this extent: that when the certificate itself, the by-laws or charter of the corporation, or the general laws of the state creating the corporation, contained valid limitations upon the transfer of the stock, its negotiability is destroyed to the extent above explained, and the transferee is charged with notice of such limitations, whether he has actual notice or not.   The stock is subject to all infirmities in the hands of the transferee that it was in the hands of the transferer, until such valid limitations of its transfer have been complied with. 2 Dan. Neg. Inst. (5th ed.) 730; *Mechanics Bank* v. *Railroad*, 13 N. Y. 599; *Union Bank* v. *Laird*, 2 Wheat. 390.

It is claimed that the bare fact that the officers of the corporation refused to issue a certificate of stock to the plaintiff, upon its demand, constitutes a fraud which entitles it to maintain this bill in equity for specific performance, and that it is unnecessary to show any other or further fraud.   Upon the principle of the cases cited, the officers of the corporation, knowing that the bank could not stand as a *bona fide* purchaser, were justified in saying to it: Your right to a certificate is denied by other stockholders of this corporation; settle the equities between yourselves, and then a certificate will be issued to whomsoever is entitled.   Under such circumstances, the mere fact of a refusal to permit a transfer of stock cannot of itself constitute such a fraud as will entitle the plaintiff to maintain this action.   The plaintiff must show that its request is entirely equitable as against non-assenting stockholders.

The charter and internal management of the defendant corporation is to be governed by the law of South Carolina.   The charter of a corporation does not consist of the articles of association alone, but of such articles taken in connection with the law under which the organization takes place.   The provisions of the law enter into, and form a part of, the charter.   *People* v. *Trust Co.*, 130 Ill. 268; *Halsey* v. *McLean*, 12 Allen 438; *Bishop* v. *Globe Co.*, 135 Mass. 132.   When a citizen of one state subscribes to the capital stock of a corporation chartered in another state, he is presumed to know the terms of the act creating that corporation. *Bishop* v. *Globe Co.*, *supra*; *Savings Ass'n* v. *O'Brien*, 51 Hun 45; *Payson* v. *Withers*, 5 Biss. 269, 278.

The South Carolina statute provides that "no transfers of stock shall be valid except as between the parties thereto, until the same shall have been regularly entered upon the books of the corporation."   The South Carolina court has held that this statute "means that until the law is complied with the transfer is invalid."

*White* v. *Bank*, 66 S. C. 491, 495. The conclusion must follow that no transferee of stock can stand as a *bona fide* purchaser until this statute has been complied with. He takes the stock subject to the claims of everybody except his transferer.

5. If it is decided that this court can regulate the internal affairs of a foreign corporation, the same reasoning will concede jurisdiction to the New York courts. Assuming that the New York court had jurisdiction (a question which it has settled in the affirmative), what is the effect of its judgment? In assuming jurisdiction, the New York court was bound by the South Carolina statutes and the interpretation given them by the courts of that state, and its judgment was in accord with the law of South Carolina. At the time that action was brought, the present plaintiff had no interest in the stock now in question, so far as the books of the defendant corporation showed. It never even requested a transfer of the stock until July 13, 1903, and could not in any view get a valid title until that time. The bank had notice of the action and was furnished with a copy of the complaint and injunction in season to protect its interests, but it preferred to have its rights determined in a forum of its own choosing.

The South Carolina statute is mandatory, and until it was complied with the transfer from Bibber to the bank was invalid except between the parties. This the bank knew or ought to have known. The action in New York was brought by citizens of that state against a corporation doing business and having property and directors there, and against Bibber who was then within the state. All parties having a valid legal interest in the stock were before the court. The bank was treated fairly, and unnecessary efforts were made to have it appear. It refused to do so at its peril, as it must have known, because of the weakness in its title. If it ever got title to the stock, it must be held to have been when it demanded a transfer on the books of the corporation, July 13, 1903, at a time when the injunction was in force; and it took title subject to such proceedings, and therefore could not get a valid title. A rule akin to the doctrine of *lis pendens* applies.

The purchase of land pending a suit concerning it is champerty. The conveyance is absolutely void, even when the purchase is *bona fide. Jackson* v. *Andrews*, 7 Wend. 152; *Cole* v. *Lake Co.*, 54 N. H. 242, 272. When a purchaser has actual notice of the pendency of a suit, it arrests all further proceedings toward the completion of a purchase and payment, and if persisted in the purchase is held fraudulent. *Griswold* v. *Miller*, 15 Barb. 520. The case of *Jeffres* v. *Cochrane*, 48 N. Y. 671, holds that negotiable notes transferred *pendente lite* are subject to *lis pendens*, provided the purchaser has actual notice; and the case of *Holbrook*

v. *Zinc Co.*, 57 N. Y. 616, while it holds that the pendency of an action in another state is not constructive notice to a citizen of New York, and that the doctrine of *lis pendens* is not applicable to stock transactions generally, does sustain *Jeffres* v. *Cochrane* on the theory of actual notice. All persons having a valid interest in the certificate of stock being before the New York court, it had apparent jurisdiction, and its judgment cannot be collaterally attacked even for fraud. *Metcalf* v. *Gilmore*, 59 N. H. 417. A like judgment would have been rendered in this state upon proof of the South Carolina laws.

6. The plaintiff was guilty of laches in not making inquiry before it took the stock. It rested quietly from April 15, 1899, until May 1, 1902, and then wrote for information in regard to the company, but did not demand a certificate until July 13, 1903, more than four years after it first took the stock and two years after it claims to have become the absolute owner of it. The plaintiff was guilty of laches in not asserting its claims when it had notice of the New York suit. It did not and could not take from Bibber an equitable title, according to a strict interpretation of the term, unless Bibber had a legal title. The bank's title was derivative from, and in a sense subordinate to, that of Bibber during the entire four years that it held the certificate. It was charged with knowledge of the fact that anything which defeated Bibber's title (as, for instance, a sale on legal process) would defeat its title. Yet it sat still and permitted the New York decree to be entered. Even then it did not demand a certificate for some months.

7. The plaintiff is an institution established under the laws of the United States for banking purposes, for receiving deposits and loaning money, and not for the purpose of dealing in stocks. A corporation has no implied power to purchase shares of the capital stock of another corporation. 1 Cook Corp., *s.* 314. A corporation cannot become a stockholder in another corporation unless such power is given by its charter or is necessarily implied in it. *Pearson* v. *Railroad*, 62 N. H. 537, 548. "A banking corporation has at common law no power to purchase or invest in the stock of another corporation, whether that other corporation be itself a bank or of a different business. A bank is organized for the purpose of receiving deposits and loaning money, not for the purpose of dealing in stocks. Any attempt to engage in such transaction is a violation of its charter rights and of its duty toward the stockholders and the public." 1 Cook Corp., *s.* 315.

It is not denied that a banking institution may take a pledge of stock, and, if necessary, enforce the pledge by taking the stock, for sale within a reasonable time thereafter; but our point is this:

The plaintiff in the present action, waiving its action to recover the value of stock, asks this court to decree a transfer of the stock, so that it may hold it an indefinite time for the rise in value which it is expected may follow in the development of the electrical business generally and the defendant corporation's business in particular. In other words, it wants the stock as a sort of permanent investment. Such is the natural and unavoidable inference. There being no implied power in a bank authorizing it to invest in stocks in this manner, it must be shown affirmatively. This it has failed to do. It has therefore failed to show that it is entitled to the relief asked for. The plaintiff must either take the position that it desires the stock for future speculation—an *ultra vires* act, or that it wants the value of the stock—a position fatal to the maintenance of its bill.

WALKER, J. No question is made that as against Bibber the bank became the owner of the stock in February, 1901, when Bibber transferred and assigned to it his certificate. He did all it was possible for him to do to vest the absolute title to the stock in his vendee. " It seems too clear for argument, that the ownership of the shares passes from the seller to the buyer by force of the contract of sale, and not by operation of law ; and if that be so, the buyer's title, so far as the seller is concerned, attaches the moment this contract is fully consummated between them." *Scripture* v. *Soapstone Co.*, 50 N. H. 571, 585; *Meredith Village Savings Bank* v. *Marshall*, 68 N. H. 417. But so far as the corporation and interested third parties, without notice, are concerned, the vendee ordinarily does not acquire all the rights of a stockholder until the transfer is entered on the corporate records. The right to become such a stockholder after an assignment of the certificate is a valuable right, constituting in a very material sense a part of the consideration for the vendee's purchase. Without such a right enforceable in the courts of law, the sale of stocks would be seriously hampered, resulting in much commercial and industrial inconvenience and embarrassment.

The bank when it purchased the Bibber stock was entitled to believe that by complying with certain reasonable regulations it would be recognized as, and in fact become, a stockholder in the corporation, possessing all the rights of other stockholders. Bibber's certificate which he assigned to the bank contained the solemn statement of the corporation, by its authorized officers and agents, that Bibber was the owner of 350 shares of its stock, and that the stock was fully paid and non-assessable. The principal reason now assigned by the corporation for refusing to register the transfer to the bank and to issue to it a new certificate, is that

Bibber paid nothing for the stock, and that under the laws of South Carolina he was not for that reason the owner of the stock represented by his certificate.   If that conclusion of law is correct so far as Bibber is concerned, and if while he held the certificate he could not legally act as a stockholder or claim to be the owner of the stock, it would be most inequitable to hold that his vendee, having no notice of any infirmity in his title and relying upon the unequivocal assertion of the corporation contained in the certifi-cate that he was the owner of the stock represented thereby, should be deemed to be in the same position with reference to the corporation that Bibber occupied.   Under such circumstances, the most obvious principles of equity and justice require that the cor-poration should be estopped from denying the title of the innocent vendee who has given value for the stock.   " The reason arises from the nature of a share certificate, which, as already stated, is a continuing affirmation of the ownership of the specified amount of stock by the person designated therein, or his assignee, until it is withdrawn in some manner recognized by law; and a purchaser in good faith has a right to rely thereon and to claim the benefit of an estoppel in his favor as against the corporation."   2 Thomp. Corp., s. 2599.   " If the certificates state upon their face that the shares have been fully paid up, the corporation will be estopped from denying the truth of this representation, and cannot charge the purchaser and transferee with further liability, although the shares have never in fact been paid up."   1 Mor. Corp., s. 306 ; 2 Cook Corp., s. 416 ; *Scripture* v. *Soapstone Co., supra; Boston & Albany R. R.* v. *Richardson,* 135 Mass. 473 ; *Holbrook* v. *Zinc Co.,* 57 N. Y. 616 ; *State* v. *McIver,* 2 S. C. 25 ; *Fraser* v. *Charleston,* 11 S. C. 486 ; *Moores* v. *Bank,* 111 U. S. 156, 165.   As no sug-gestion is made that the certificate was not regular in form and properly executed by the officers of the corporation, or that the corporation lacked the power to issue the stock for any purpose, it is not important to inquire whether the stock was legally and regularly issued to, or acquired by, Bibber.   The corporation and the stockholders whom it represents are estopped to interpose that defence in this suit; and unless some other reason exists for its refusal to permit the record of the transfer to be made on its books and to recognize the bank as a stockholder, it would seem that the bank has established its right.

The fact that since the plaintiff is a national bank it has no authority or power to invest its funds in the stock of other cor-porations, does not demonstrate its inability, or want of corporate power, to become a stockholder in another corporation upon receiving the stock in payment of a legitimate claim against the former owner of it.   " In the honest exercise of the power to com-

promise a doubtful debt owing to a bank, it can hardly be doubted that stocks may be accepted in payment and satisfaction, with a view to their subsequent sale or conversion into money so as to make good, or reduce, an anticipated loss. Such a transaction would not amount to a dealing in stocks." *First Nat'l Bank* v. *Bank*, 92 U. S. 122, 128. In *California Bank* v. *Kennedy*, 167 U. S. 362, 366, the court say : "No express power to acquire the stock of another corporation is conferred upon a national bank, but it has been held that, as incidental to the power to loan money on personal security, a bank may in the usual course of doing such business accept stock of another corporation as collateral, and by the enforcement of its rights as pledgee it may become the owner of the collateral and be subject to liability as other stockholders. *National Bank* v. *Case*, 99 U. S. 628." See, also, *Concord First Nat'l Bank* v. *Hawkins*, 174 U. S. 364. The plaintiff bank, having in the ordinary course of business received the stock as collateral security for a loan to Bibber, afterward sought to protect itself from loss by becoming the owner of the stock. It enforced its lien on the security, and thus became the owner thereof. So far as appears from the case, it was not dealing in stocks as a primary business, but, as incidental to its general business of loaning money, it acquired Bibber's title to the stock, as, upon the authorities, it had a right to do. How long it may hold the stock under the national banking laws, it is unnecessary to inquire. The fact of the good faith of the transaction, so far as material, was established by the finding of the superior court, to which no exception was taken.

As the plaintiff's right to relief, either legal or equitable, seems to be clear, it becomes necessary to consider whether the superior court had jurisdiction of the subject-matter of the suit. No claim is made that the defendant was not regularly a party at the beginning of the litigation; hence it thereby became amenable to such orders as justice might require. Justice required the allowance of the amendment by which the action at law became an action in equity. To the ruling allowing the amendment the defendants took no exception; and they cannot now claim that they are not as fully parties defendant as they were when they appeared in the action at law. Nor is the position tenable that the court will not entertain jurisdiction in behalf of a foreign corporation. *Kidd* v. *Traction Co.*, 72 N. H. 273, 283. Both parties are properly in court. But it is argued that as the defendant corporation was chartered under the laws of another state, this court has no power to grant the relief sought, because it relates to the internal affairs of the corporation, which it is the peculiar and exclusive province of the courts of the incorporating state to supervise and regulate.

It may be conceded that the courts of one state either have not the power, or deem it injudicious to exercise the power, of determining rights dependent upon the essentially internal management of the affairs of a corporation chartered by the laws of another state.   The forum of the latter state, it is held, affords the most appropriate place for such litigation, principally for the reason that ordinarily it alone possesses power adequate for the enforcement of all orders and decrees that justice may require.   6 Thomp. Corp., *s.* 7904.   While there is not entire unanimity in the cases as to the correct definition of the expression "internal affairs" (Beale For. Corp., *s.* 307; 3 Clark & Marsh. Priv. Corp., *ss.* 864, 865), it cannot be controverted that a foreign corporation, legally made a defendant in an action upon a contract which it had apparent authority to make, cannot escape liability thereon upon the mere ground that it is a foreign corporation.   In such a case it enjoys no immunity or privilege not possessed by domestic corporations or individuals.   If it has legally bound itself by a contract with a plaintiff who sues in his own right, and not as a stockholder or director of the corporation, the jurisdiction of the court to pronounce judgment against it cannot be questioned. The determination of its liability involves its external legal relations to one not in any way officially connected with it.   If, having the power to do so, it issues its promissory note or bond, which is regularly transferred to the plaintiff in the ordinary course of business, it cannot escape liability in the courts of another state where it is properly made a defendant, though the construction of the contract may involve a consideration of the statutes and decisions of the state of its incorporation.   *Limerick Nat'l Bank* v. *Howard*, 71 N. H. 13.   The question relates, not to its internal management or affairs, but to its obligations to others arising from the prosecution of its legitimate business; and ordinarily those obligations are enforceable wherever the corporation can be made a party to the action.   19 Cyc. 1238.

" In the exercise of these functions, any crimes committed, penalties, fines, or forfeitures incurred by the violation of our laws, or any contractual liability to a citizen incurred, may be redressed in our courts, and in such case the jurisdiction does not depend on whether the corporation is doing business generally in this state, but the jurisdiction attaches in the one case to enforce a public law of the state against an offender, and in the other to enforce a contract, and in any case falling under either of these classes it is wholly immaterial from what foreign state or government the company derives its chartered powers, or to what extent it is doing business in this state.   But where the act complained of affects the complainant only in his relation as a shareholder or

·officer of the corporation, and no public right is involved, then the ·controversy must be said to relate to the internal affairs of the company; and in case of a foreign corporation, the great weight ·of authority is opposed to the jurisdiction of the court of equity." *Bradbury* v. *Mining Co.*, 113 Ill. App. 600, 608.   See, also, *March* v. *Railroad*, 43 N. H. 515; *Kansas etc. Co.* v. *Company*, 135 Mass. 34; *Madden* v. *Company*, 181 Pa. St. 617, 622; *North Star Mining Co.* v. *Field*, 64 Md. 151; *Guilford* v. *Telegraph Co.*, 59 Minn. ·332.

The plaintiff is not a stockholder of the defendant corporation, in the full and proper sense of that term.   When it became the ·owner of the stock it occupied the position of a stranger to the ·corporation; and what it now seeks is the enforcement of the obligation of the corporation then incurred, if at all, to recognize it as a stockholder.   As the corporation is estopped to urge as against the bank that the stock was not legally issued, it must be treated :as valid stock when the bank became the owner of it.   The case then stands as though the stock was valid and binding on the corporation in the hands of Bibber when he sold it to the bank.   In that aspect, the plaintiff acquired a right by the transaction to have the stock transferred on the books of the corporation, so that it would possess as against the corporation and as against the world all the privileges of a stockholder, which it is conceded are valuable.   2 Cook Corp., *s.* 442.   The right to a transfer of the ·stock on the books of the corporation was one of the rights acquired by the bank at the time of the sale.   The corporation had in effect agreed to make such transfer upon the presentation ·of the former certificate by a *bona fide* vendee and a demand for such transfer.   In order to make its stock conveniently salable and thus to enhance its value as an investment, it represented to :all who might desire to purchase its stock, and to all stockholders ·who might wish to sell their stock, that it would invest the pur·chasers thereof with all the rights of stockholders by making a record on its books of the fact of each sale as made.   Having made such representations and assumed such obligations, it would ·be highly inequitable for it to repudiate the same to the prejudice ·of innocent purchasers of its stock.

In this respect the law of South Carolina is not peculiar.   The ·statute of that state, providing that " no transfers of stock shall be valid except as between the parties thereto, until the same shall have been regularly entered upon the books of the corporation " (Code, ·s. 1894), was not intended to limit the power of a corporation to agree with a *bona fide* purchaser of its stock to enter the transfer ·on its books upon demand and notice, when no legal reason exists ·for its refusal.   Such a construction of the statute would render

stock issued by corporations of that state of little value as investments in commercial dealings.  For some purposes, and as against parties having prior claims or liens on the stock, an unrecorded transfer may be invalid, and is so regarded in South Carolina. *State Bank* v. *Cox*, 11 Rich. Eq. 344; *State* v. *McIver*, 2 S. C. 25; *Parker* v. *Bank*, 53 S. C. 583; *Efird* v. *Land Co.*, 55 S. C. 78; *White* v. *Bank*, 66 S. C. 491, 494.  This statutory provision, if not complied with, does not prevent a valid sale for some purposes, or justify the corporation in captiously refusing to allow an entry on its books which shall make the sale valid for all purposes, or which shall amount merely to a performance of its agreement to permit such record.  3 Clark & Marsh. Priv. Corp., *ss.* 585, 586; *Scripture* v. *Soapstone Co.*, *supra*.  This limitation is effective only so far as its enforcement is supported by reasons of commercial utility and fairness.  To authorize the issuance of stock, and to declare the validity of its sale, even as against the corporation, to depend upon the caprice of the corporate officers in recording or refusing to record the transfer, would be an unreasonable construction of the purpose of the legislature in empowering the corporation to place its stock upon the market and to make it salable.  It would in effect authorize the corporation to repudiate its contractual obligations.  The defendant was not disqualified to bind itself to permit the record of the transfer of the Bibber stock to the plaintiff.

The plaintiff's right to a transfer therefore depends on the contract of the corporation.  The bank is merely seeking the enforcement of a contractual obligation.  It is not attempting in this proceeding to interfere with the essentially internal affairs of the corporation.  It asks merely that the corporation—a party to the suit—shall recognize it as a stockholder, by virtue of its representation to the bank at the time of the sale that it would do so. The court is not asked to determine what the rights of a stockholder may be in this foreign corporation, or to exercise a discretion in behalf of the plaintiff in regard to the corporate management of the defendant.  The relief sought is merely the enforcement of a contractual right which accrued to the plaintiff when it bought the stock of Bibber.  It then impliedly promised that it would permit the transfer.  3 Clark & Marsh. Priv. Corp., *s.* 603; *Pinkerton* v. *Railroad*, 42 N. H. 424; *Bond* v. *Iron Co.*, 99 Mass. 505.  "A certificate of stock is not necessary to the complete ownership of the stock.  . . .  But the corporation is bound, upon demand, to issue a certificate of stock to one who is entitled to it; and if it refuses, the stockholder may bring suit in equity to compel its issuance, or he may sue it in an action at law for damages."  1 Cook Corp., *s.* 13.

It is further argued in behalf of the defendants that the New York judgment against Bibber bound the plaintiff; in other words, that the plaintiff, although not in fact a party to that suit, is concluded thereby, because according to the books of the bank Bibber alone was the owner of the stock in controversy, and because the sale of the stock by him vested no title in the bank. But the last reason, in view of the foregoing discussion, is not supported by reason or authority. The entire title which Bibber had to the stock passed to the bank at the time of the sale, February 25, 1901. May 1, 1902, the bank notified the defendant corporation that it was the owner of the Bibber stock; so that the corporation was apprised of the claim of ownership by the bank long before January 3, 1903, when the New York suit was instituted. The bank's title to the stock for all purposes then depended upon the mere formality of a record, since, as above suggested, the corporation had no legal ground for objecting to the record. Under such circumstances, at least it cannot be said that the bank had no legal title to the stock in January, 1903, as against the corporation; and since Bibber was not only not the owner of the stock at that time, but was not in any sense the agent or representative of the bank—the true owner—in that litigation, the binding effect of the New York judgment upon the plaintiff is not apparent. The effect of the defendants' contention is to deprive the plaintiff of valuable vested rights by a judgment against a third party in a suit to which it was not a party, either directly or indirectly. It is unnecessary to cite authorities to show that such a result cannot be sustained. *Holbrook* v. *Zinc Co.*, 57 N. Y. 616.

It is also contended that the plaintiff is not entitled to a decree for specific performance since he has a plain and adequate remedy at law. In view of the authorities to the contrary, that proposition does not demand extended discussion. It is " contrary to the overwhelming weight of authority. An action for damages does not always afford an adequate remedy for refusal of a corporation to recognize a person as a stockholder; and it is well settled, therefore, that if a corporation wrongfully refuses to recognize and register a valid transfer of stock, and issue a new certificate to the transferee, he may maintain a bill in equity to compel it to do so." 3 Clark & Marsh. Priv. Corp., s. 605; 1 Cook Corp., s. 13. It is to be observed that this is not a proceeding to compel a vendor of stock to assign and deliver his certificate to the vendee under a contract of sale (*Eckstein* v. *Downing*, 64 N. H. 248), but to compel the corporation to perform a merely clerical act for the benefit of a vendee who has already purchased and now holds the certificate. To deny him relief by specific performance, upon the ground that he could recover damages at law, would be, in effect,

to compel him to sell what he already owns at such a price as a jury might think it was worth. And especially ought a court of equity to decree specific performance when, as in this case, the real and prospective value of the stock depends upon the future development and management of the corporate enterprise.

So far as the claim that the plaintiff is guilty of laches in not bringing its suit sooner presents a question of fact, it has been found untenable by the superior court; and so far as a question of law is involved, it is sufficient to say that it does not conclusively appear that the plaintiff's delay in this respect was unreasonable or that the defendants have been prejudiced thereby in any respect. *Douglass* v. *Railroad*, 72 N. H. 26, 31.

The exception to the exclusion of the testimony of the witness relating to an admission made by Greenwood, a director of the bank, who was also its vice-president, is unavailing. The ruling of the court was based upon the fact that it did not appear that the official of the bank was authorized to bind the bank by the proffered admission. Since there is no presumption of law that his official relation to the bank furnished or proved such authority (*Low* v. *Railroad*, 45 N. H. 370, 381; *Wait* v. *Association*, 66 N. H. 581; *New Boston Fire Ins. Co.* v. *Upton*, 67 N. H. 469), the exception presents no error.

*Exceptions overruled.*

All concurred.